# Title IX Investigation Report

**Investigator Name**: Robert Dietzel, Thrun Law Firm, P.C.

**Report Date**: March 14, 2022

**Complainant Name**: ▌▌▌▌▌▌▌ Student, Marcellus Elementary School

**Complainant's Advisor**: ▌▌▌▌▌▌▌ Mother

**Respondent Names**: ▌▌▌▌▌▌▌▌▌ Student, Marcellus Elementary School; ▌▌▌▌▌▌▌ Student, Marcellus Elementary School

**Respondents' Advisors**: ▌▌▌▌▌▌▌ Mother; ▌▌▌▌▌▌▌ Mother

**Date Formal Complaint Filed**: November 11, 2021

**Summary of Allegation**: At the time of the allegations, Complainant and Respondents were all 5th grade students at Marcellus Elementary School. Complainant, through her mother, alleges that on October 6, 2021, ▌▌▌▌▌▌▌▌ restrained Complainant's hands, forced her to the ground, and inappropriately touched her. The complaint further alleges that ▌▌▌▌▌▌▌▌ and ▌▌▌▌▌▌▌ inappropriately touched Complainant and other students as part of a game the students call "Twindldee" on multiple occasions during Fall 2021.

**Relevant Chronology:**

- November 11, 2021 – ▌▌▌▌▌▌▌ filed a formal written complaint alleging Title IX sexual harassment. (Exhibit 1).

- November 15, 2021 – Melinda Bohan, Title IX Coordinator, sent notice letters to Complainant's parents and Respondents' parents notifying them of the Title IX complaint.

- November 17, 2021 – Robert Dietzel from Thrun Law Firm was assigned to investigate the complaint.

- November 29, 2021 – The Investigator left a message for ▌▌▌▌▌▌▌ requesting a phone call back to schedule an interview with ▌▌▌▌▌▌▌ The Investigator and Mrs. ▌▌▌▌ exchanged additional voice mail messages on November 29, 2021 and November 30, 2021.

- December 2, 2021 – ▌▌▌▌▌▌▌ and the Investigator exchanged e-mail messages regarding scheduling an interview for ▌▌▌▌▌▌▌

- December 5 – December 6, 2021 – ▌▌▌▌▌▌▌ and the Investigator exchanged e-mail messages regarding ▌▌▌▌ interview.

- December 6, 2021 – ▌▌▌▌▌▌▌ e-mailed the Investigator with a summary of a phone call she had with ▌▌▌▌▌▌▌ (Exhibit 2).

- December 7, 2021 – The Investigator sent ▌▌▌▌▌▌▌ an e-mail and a letter explaining the interview process for ▌▌▌▌▌▌▌ (Exhibit 3).


Title IX Investigation Report
March 14, 2022
Page 2 of 10

- December 8, 2021 – The Investigator interviewed ▮▮▮▮ and her parents, Thom and ▮▮▮▮.

- December 9, 2021 – ▮▮▮▮ e-mailed the Investigator asking that the Investigator call ▮▮▮▮ at school because ▮▮▮▮ had additional information she did not share at the previous day's interview. The Investigator contacted the Title IX Coordinator to arrange a phone call, but ▮▮▮▮ had left school. The Investigator e-mailed ▮▮▮▮.

- December 13 – December 14, 2021 – The Investigator spoke by phone to the parents of several student witnesses as well as to Respondents' parents to schedule interviews. Interviews were scheduled for December 16, 2021.

- December 15, 2021 – The Investigator sent letters to the parents of ▮▮▮▮ and ▮▮▮▮ explaining the interview process. (Exhibits 4 & 5).

- December 15 – December 16, 2021 – ▮▮▮▮ and the Investigator exchanged e-mail messages about setting up a second meeting with ▮▮▮▮.

- December 15, 2021 – Tristina Bochelen canceled the interview scheduled for Kasia Bochelen.

- December 16, 2021 – The Investigator interviewed several witnesses in person. The Investigator also interviewed both Respondents with their parents present.

- December 16, 2021 – The Investigator spoke to ▮▮▮▮ by phone.

- December 17, 2021 – The Investigator contacted Melinda Bohan, the District's Title IX Coordinator, about additional allegations of sexual harassment and bullying disclosed during the December 16, 2021 witness interviews.

- January 4, 2022 – ▮▮▮▮ and the Investigator exchanged e-mail messages regarding the status of the investigation.

- January 10, 2022 – The Investigator interviewed Tammy Curtis and Sarah Bischoff by Zoom.

- January 24, 2022 – The Investigator contacted Cass County Sheriff's Department to inquire about the availability of police reports. The Sheriff's Department informed the Investigator that a Freedom of Information Act request would be required to obtain the police reports.

- January 24, 2022 – ▮▮▮▮ and the Investigator exchanged e-mail messages regarding the status of the investigation. Mrs. ▮▮▮▮ requested that the Investigator interview Kasia Bochelen.

- January 26, 2022 – ▮▮▮▮ contacted the Investigator about obtaining additional information from ▮▮▮▮.

- February 7 – February 8, 2022 – ▮▮▮▮ and the Investigator exchanged e-mail messages regarding the status of the investigation.

Title IX Investigation Report
March 14, 2022
Page 3 of 10

- February 14, 2022 – The Investigator sent correspondence to Complainant and Respondents advising them of their right to inspect and review all evidence collected during the investigation. All parties were provided access to an electronic version of all collected evidence. (Exhibit 6).

- February 14 – February 15, 2022 – ▮▮▮▮▮ and the Investigator exchanged e-mail messages about Mrs. ▮▮▮ ability to access the evidence.

- February 22, 2022 – ▮▮▮▮▮ submitted a response to the evidence. (Exhibit 7).

- February 23, 2022 – ▮▮▮▮▮ submitted a response to the evidence. (Exhibit 8).

- February 28, 2022 – ▮▮▮▮▮ contacted this Investigator by e-mail to inquire about the status of the investigation.

- March 7, 2022 – ▮▮▮▮▮ contacted this Investigator by e-mail to inquire about the status of the investigation and to ask that the investigation report be mailed.

- March 14, 2022 – This investigation report was transmitted to the Complainant and Respondent through their respective parent Advisors and to Melinda Bohan, the District's Title IX Coordinator. (Exhibit 9).

**Witness Interviews**

The following witnesses were interviewed as part of this investigation[1]:



- ▮▮▮ and ▮▮▮▮▮ – December 8, 2021
- ▮▮▮▮▮ (with ▮▮▮ and ▮▮▮▮▮ present) – December 8, 2021
- ▮▮▮▮▮ by phone – December 16, 2021
- ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ – December 16, 2021
- Kimberly Blades – December 16, 2021
- Henry Essex – December 16, 2021
- ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ (with parents present) – December 16, 2021
- ▮▮▮▮▮ (with mother present) – December 16, 2021
- ▮▮▮ and ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ (with ▮▮▮ and ▮▮▮▮▮ present) – December 16, 2021
- ▮▮▮▮▮ and ▮▮▮▮▮ – December 16, 2021
- ▮▮▮▮▮ (with ▮▮▮▮▮ and ▮▮▮▮▮ present) – December 16, 2021
- Tammy Curtis – January 10, 2022

---

[1] For all student interviews where a parent was not present, either Principal Sarah Bischoff or Title IX Coordinator Melinda Bohan was present.

Title IX Investigation Report
March 14, 2022
Page 4 of 10

- Sarah Bischoff – January 10, 2022

Summaries of the witness interviews are attached as Exhibit 10.

**Other Contacts with Parties**

This Investigator's contacts with the parties and their Advisors are summarized above in the Relevant Chronology.

**Evidence**

The following evidence was considered as part of this investigation:

- Student witness statements. (Exhibit 11).
- Video footage timeline prepared by Sarah Bischoff. (Exhibit 12).

**Other Information Relevant to this Investigation**

- Complainant's mother, ▮▮▮▮▮▮▮▮, requested that this Investigator interview Kasia Bochelen. Kasia was scheduled to be interviewed on December 16, 2021, but her parents canceled the interview. This Investigator determined that an interview with Kasia is not necessary.

- Complainant's mother, ▮▮▮▮▮▮▮▮, requested that this Investigator obtain additional information from ▮▮▮▮▮▮▮▮. This Investigator interviewed ▮▮▮▮▮▮▮▮ twice and has accepted and considered all information provided by ▮▮▮▮▮▮▮▮. This Investigator determined that a third interview of ▮▮▮▮▮▮▮▮ is not necessary.

- This Investigator determined that it is not necessary to obtain copies of police reports to finalize the Title IX investigation.

- This Investigator determined that it is not necessary to review hallway video footage to finalize the Title IX investigation.

**Party Responses to Evidence**

On February 14, 2022, this Investigator sent a link to identical copies of the evidence to Complainant and both Respondents through their parent Advisors along with notice of their respective right to inspect, review, and respond to the evidence. (Exhibit 6). Respondent ▮▮▮▮▮▮▮▮, through her parent Advisor, submitted a response to the evidence on February 22, 2022. (Exhibit 7). Complainant, through her parent Advisor, submitted a response to the evidence on February 23, 2022. (Exhibit 8). Respondent ▮▮▮▮▮▮▮▮ did not respond to the evidence.

This Investigator carefully reviewed and considered the parties' responses to the evidence in making the findings of fact and recommendations contained in this Investigation Report. This Investigator concluded that no further investigation was required based on the content of the parties' responses.

Title IX Investigation Report
March 14, 2022
Page 5 of 10

**Findings of Fact**

Based on a preponderance of the evidence collected during this investigation as described in this Investigation report, I make the following findings of fact:

1. At the time of the alleged incidents, Complainant was a 5th grade student at Marcellus Elementary School.

2. At the time of the alleged incidents, Respondent ▮▮▮▮▮ was a 5th grade student at Marcellus Elementary School.

3. At the time of the alleged incidents, Respondent ▮▮▮▮▮ was a 5th grade student at Marcellus Elementary School.

4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5. On October 6, 2021 at approximately 11:42 a.m., a group of girls entered the girls' restroom at Marcellus Elementary School. ▮▮▮▮▮ ▮▮▮▮▮ and ▮▮▮▮▮ were part of the group.

6. While in the restroom, ▮▮▮▮▮ grabbed ▮▮▮▮▮ shirt and tried to push or pull her to the ground. ▮▮▮ told ▮▮▮▮▮ to stop, but ▮▮▮▮▮ did not. ▮▮▮ was able to get away from ▮▮▮▮▮. ▮▮▮ never hit the floor. ▮▮▮▮▮ told ▮▮▮ that she was "going to hump her." ▮▮▮▮▮ did not touch ▮▮▮ breasts, genital area, or buttocks during this interaction.

7. Complainant and her mother reported what happened in the restroom to Principal Sarah Bischoff on October 7, 2021. Ms. Bischoff interviewed ▮▮▮▮▮ who admitted that she pulled on ▮▮▮ shirt in the restroom. Ms. Bischoff also interviewed ▮▮▮▮▮ who witnessed the interaction. ▮▮▮ verified that ▮▮▮▮▮ pulled on ▮▮▮ shirt in the restroom. No one described the incident to Ms. Bischoff in a way that would suggest that the behavior was based on sex.

8. Ms. Bischoff assigned ▮▮▮▮▮ a lunch detention for the October 6, 2021 restroom incident. ▮▮▮▮▮ later apologized to ▮▮▮ for her behavior.

9. In Fall 2021, ▮▮▮▮▮ invented what she believed to be a "game," where she would grab or tickle other girls in the genital area over the clothes, yell "Twiddle Dee," laugh, and run away.[2]

10. ▮▮▮▮▮ and ▮▮▮▮▮ both touched other students during the "Tickle Game." The conduct usually occurred outside during recess on the playground.

---

[2] For ease of reference, these actions will be referred to as the "Tickle Game."

11. As part of the "Tickle Game," ▮▮▮▮ touched ▮▮▮▮ genital area over the clothes on multiple occasions from September 20, 2021 through October 17, 2021. The touch was a brief tap. It did not include stroking, rubbing, pinching, or lingering.

12. As part of the "Tickle Game," ▮▮▮▮ touched ▮▮▮▮ genital area over the clothes on approximately five occasions from September 20, 2021 through October 17, 2021. The touch was a brief tap. It did not include stroking, rubbing, pinching, or lingering.

13. ▮▮▮▮ asked ▮▮▮▮ to stop touching her as part of the "Tickle Game." ▮▮▮▮ touched ▮▮▮▮ at least one time after being asked to stop.

14. ▮▮▮▮ asked ▮▮▮▮ to stop touching her as part of the "Tickle Game." ▮▮▮▮ did not touch ▮▮▮▮ after being asked to stop.

15. As part of the "Tickle Game," ▮▮▮▮ and ▮▮▮▮ touched several other girls in the genital area. The touch was always a brief tap. It never included stroking, rubbing, pinching, or lingering.[3]

16. On occasion, ▮▮▮▮ would demonstrate the "Tickle Game" to male students by telling the male students to watch as she touched one of the female students, saying words like "this is 'Twiddle Dee.'" ▮▮▮▮ was never used for those demonstrations.

17. ▮▮▮▮ thought the "Tickle Game" was funny. She did it to be silly. She did not intend to upset or hurt anyone. She derived no sexual gratification from the "Tickle Game."

18. ▮▮▮▮ thought the "Tickle Game" was funny. She did not intend to upset or hurt anyone. She derived no sexual gratification from the "Tickle Game."

19. On or around October 18, 2021, Ms. Bischoff learned about the "Tickle Game" from local law enforcement.

20. Ms. Bischoff talked to Kasia Bochelen about the "Tickle Game" on October 18, 2021. Kasia told Ms. Bischoff that ▮▮▮▮ came up with the Tickle Game. Kasia identified several students who had been touched during the Tickle Game, including ▮▮▮▮ and ▮▮▮▮.

21. On October 18, 2021, Ms. Bischoff called all of the 5th grade girls to her office and asked them to give statements.

22. Based on the statements and other information, Ms. Bischoff concluded that ▮▮▮▮ and ▮▮▮▮ touched other students inappropriately as part of the Tickle Game. Ms. Bischoff further concluded that ▮▮▮▮ engaged in additional inappropriate behavior in the restroom. Ms. Bischoff assigned ▮▮▮▮ a one-day out-of-school suspension. She assigned ▮▮▮▮ a two-day out-of-school suspension.

---

[3] It is this Investigator's understanding that the parents of all students who may have been touched as part of the "Tickle Game" have been notified and advised of their right to file a formal Title IX complaint.

Title IX Investigation Report
March 14, 2022
Page 7 of 10

23. ▮▮▮▮ and ▮▮▮▮ have been directed to have no contact with ▮▮▮▮. They are not permitted to talk to her or look at her. Ms. Bischoff has provided explicit instruction to both of them on how they are expected to follow the no-contact directive.

24. Ms. Bischoff also imposed additional restrictions on ▮▮▮▮ including requiring that she only use the restroom in Ms. Curtis's office and that she be escorted to and from the restroom. At that time, the District also adjusted its procedures for student restroom use. Since that date, only one student may use the restroom at any one time, and an adult is stationed outside the restroom during most of the school day to monitor restroom behavior.

25. Since the present Title IX complaint was filed, significant additional restrictions have been placed on ▮▮▮▮. She is always escorted and monitored during the school day. Arrival and departure protocols have been developed so that she has no contact with ▮▮▮▮.

26. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27. ▮▮▮▮ has not had consistent school attendance since filing the Title IX Complaint. She struggles with attending school and often refuses to attend or calls her parents to pick her up. ▮▮▮▮ is apprehensive about attending school because of the actions of ▮▮▮▮ and ▮▮▮▮.

**Board Policy Considerations:**

Board Policy 2266 defines sexual harassment as conduct on the basis of sex that satisfies one or more of the following:

A. A District employee conditioning the provision of a District aid, benefit, or service on a person's participation in unwelcome sexual conduct;

B. Unwelcome conduct that a reasonable person would determine to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

C. "Sexual assault," "dating violence," "domestic violence," and "stalking."[4]

Board Policy 2266 defines "consent" as "a voluntary agreement to engage in sexual activity by a person legally capable of consenting. Someone who is incapacitated cannot consent. Past consent does not imply future consent. Silence or an absence of resistance does not imply consent. Consent to engage in sexual activity with one person does not imply consent to engage in sexual activity with another. Consent can be withdrawn at any time. Coercion, force, or threat of either invalidates consent."

Board Policy 2460 requires the District to ensure a comprehensive, free, and appropriate educational program to students with disabilities that complies with state and federal laws and guidelines. Board Policy

---

[4] This Investigator refers the reader to Board Policy 2266 for definitions of those terms.

Title IX Investigation Report
March 14, 2022
Page 8 of 10

2461 ensures the provision of a free appropriate public education to a student with a disability in the least restrictive environment feasible. Board Policies 2260, 2260.01, and 5517 prohibit discrimination against students based on disability.

Board Policy 5610 provides that suspension or expulsion from school should be a rare occurrence. Before suspending or expelling a student, the District must first determine whether restorative practices would better address the student's misconduct. Further, before suspending or expelling any student, the District must consider seven specific factors, including: (1) the student's age, (2) the student's discipline history, (3) whether the student has a disability, (4) the seriousness of the misconduct, (5) whether the conduct threatened the safety of another person, (6) whether a lesser intervention would address the conduct, and (7) whether restorative practices will be used. Board Policy 5610.03 require that the District follow all state and federal laws related to the suspension or expulsion of a student with a disability.

In amending the Title IX regulations, the United States Department of Education emphasized that nothing in Title IX may be construed to alter or diminish a student's rights under the Individuals with Disabilities Education Act.[5] In making a determination of responsibility and determining appropriate remedial measures, the Decision Maker should be mindful of the interplay between Title IX and ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ rights under the Individuals with Disabilities Education Act.

**Recommendation**[6]

For the reasons explained below, I recommend that the Decision Maker make the following determinations of responsibility:

1. On October 6, 2021, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ sexually harassed ▓▓▓▓▓▓▓▓▓▓ by accosting her in the girls' restroom, attempting to push her to the ground, and threatening to "hump her." In isolation, this incident would not constitute sexual harassment. However, given the circumstances predating the incident, including that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ had repeatedly touched ▓▓▓▓▓▓▓▓▓▓ in the genital area against her will, a reasonable person in ▓▓▓▓▓▓▓▓▓▓ position would find the October 6, 2021 incident to be so severe, pervasive, and objectively offensive to effectively deny equal access to District programs and activities.

2. The October 6, 2021 restroom incident was not a sexual assault because there was no unwanted sexual touching.

---

[5] Commentary to the Title IX regulations states, for example, that the regulations "do not supersede the IDEA, Section 504, or the ADA. The final regulations provide significant flexibility for [schools], and [schools] may utilize this flexibility in challenging cases, including where a [school] must comply with both these final regulations, and applicable disability laws." The commentary further states that a school's "compliance with these final regulations would [not] alter a [school's] child find responsibilities or a child with a disability's right to a free appropriate public education…under the IDEA or Section 504."

[6] On January 15, 2021, the Office for Civil Rights published a Questions and Answers document regarding the new Title IX regulations, which states that an investigator may recommend findings of fact, determinations of responsibility, and remedies to the Decision Maker. Nevertheless, the Decision Maker is under an "independent obligation to objectively evaluate relevant evidence, and thus cannot simply defer to recommendations made by the investigator in the investigative report."

3. ▇▇▇▇ sexually harassed ▇▇▇▇ by repeatedly tapping her in the genital area over the clothes, yelling Twiddle Dee, laughing, and running away. A reasonable person in ▇▇▇▇ position would find such repeated unwanted touching to be so severe, pervasive, and objectively offensive to effectively deny equal access to District programs and activities.

4. ▇▇▇▇ sexually harassed ▇▇▇▇ by repeatedly tapping her in the genital area over the clothes, yelling Twiddle Dee, laughing, and running away. A reasonable person in ▇▇▇▇ position would find such repeated unwanted touching to be so severe, pervasive, and objectively offensive to effectively deny equal access to District programs and activities.

5. Neither ▇▇▇▇ nor ▇▇▇▇ sexually assaulted ▇▇▇▇ during the "Tickle Game." A preponderance of the evidence does not establish that the touching was for sexual gratification.[7]

In determining appropriate remedies, I recommend that the Decision Maker consider whether further punitive sanctions are warranted, especially in light of the fact that both Respondents have already received disciplinary consequences, neither intended to cause harm, and both are relatively young. With respect to ▇▇▇▇ ▇▇▇▇.[8] In making that determination, the policies referenced above may be helpful.

Finally, I recommend that the Decision Maker consider nonpunitive remedial measures, including counseling for all involved students, continuation of the existing supportive measures, social skills training, and, for ▇▇▇▇ ▇▇▇▇.

**Referral to Decision Maker**

This Investigation Report was sent to both parties and their advisors and to the Decision Maker. Before making a final determination of responsibility[9], the Decision Maker will afford each party an opportunity to submit written, relevant questions that a party wants asked of any party or witness; provide each party with the answers; and allow for additional, limited follow-up questions from each party. The parties will have at least ten calendar days to review and respond to this Investigation Report before the Decision Maker renders a final determination of responsibility.

---

[7] The Title IX Regulations and Policy 2266 incorporate the FBI's uniform crime reporting definitions for sexual assault, which include forcible rape, forcible sodomy, sexual assault with an object, forcible fondling, incest, and statutory rape. The only one of those offenses alleged in the Formal Complaint is forcible fondling. An element of forcible fondling is that the touch must be for sexual gratification.

[8] Revised School Code section 1310d creates a rebuttable presumption against expulsions or suspensions that exceed 10 school days. MCL 380.1310d.

[9] The Decision Maker must make a determination as to whether Respondents engaged in the conduct alleged in the formal Title IX Complaint and, if so, whether the conduct constitutes sexual harassment as defined in Policy 2266. In making a final determination of responsibility, the Decision Maker must use the preponderance of the evidence standard.

Title IX Investigation Report
March 14, 2022
Page 10 of 10

**Index of Exhibits**

Exhibit 1: November 11, 2021 Title IX Complaint
Exhibit 2: E-mail correspondence from ▮▮▮▮ to Investigator
Exhibit 3: December 7, 2021 correspondence to ▮▮▮▮ re: interview
Exhibit 4: December 15, 2021 correspondence to ▮▮ and ▮▮▮▮ re: interview
Exhibit 5: December 15, 2021 correspondence to ▮▮▮▮ and ▮▮▮▮ re: interview
Exhibit 6: February 14, 2022 correspondence to Parties re: evidence for inspection and review
Exhibit 7: Response to Evidence submitted by ▮▮▮▮ dated February 22, 2022
Exhibit 8: Response to Evidence submitted by ▮▮ and ▮▮▮▮ dated February 23, 2022
Exhibit 9: March 14, 2022 correspondence to Parties & Decision Maker transmitting investigation report
Exhibit 10: witness interview summaries
Exhibit 11: Student Statement Forms
Exhibit 12: Video Footage Timeline

Submitted by:

_[signature: Robert A. Dietzel]_                                    Date: _____March 14, 2022_____
Robert Dietzel*
Attorney
Thrun Law Firm, P.C.

*By my signature, I assert that I do not have a bias or conflict of interest for or against Complainant or Respondents specifically, nor do I have a general bias or conflict of interest for or against parties to a Title IX grievance process, whether they be complainants or respondents. I further assert that I have, at all times, endeavored to conduct this investigation fairly by giving both parties an equal opportunity to provide both inculpatory and exculpatory evidence and to review and respond to the evidence. I have at all times operated under the presumption that Respondents are not responsible for the alleged conduct.