UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

C.C., as Parent and Legal Guardian of JANE
DOE, a Minor,

     Plaintiff,

v

MARCELLUS COMMUNITY SCHOOLS,
MARCELLUS COMMUNITY SCHOOLS
BOARD OF EDUCATION, and individuals
NANETTE PAULEY, MELINDA BOHAN,
SARAH BISCHOFF, TAMMY CURTIS,
HENRY ESSEX and ROBERT DIETZEL,
In their individual capacities,

     Defendants.

CASE NO. 1:23-cv-00255

HON. PAUL L. MALONEY

---

Elizabeth Abdnour (P78203)
ELIZABETH ABDNOUR LAW, PLLC
Attorneys for Plaintiff
1100 W. Saginaw St. Ste. 4A-2
Lansing, MI 48915
(517) 292-0067
Email: elizabeth@abdnour.com

Mark T. Ostrowski (P49761)
Jessica M. Stark-Flechsig (P80647)
KLYCZYNSKI, GIRTZ & VOGELZANG
Attorneys for the MCS Defendants
3033 Orchard Vista Dr SE, Ste 308
Grand Rapids, MI 49546
(616) 559-8649
Email: marko@kgvlaw.com

Mark A. Gilchrist (P61741)
Michael D. Wiese (P78353)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Defendant Robert Dietzel
100 Monroe Center, N.W.
Grand Rapids, MI 49503
616-774-8000
mgilchrist@shrr.com
mwiese@shrr.com

---

## Robert Dietzel's Brief in Support of Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

---

Date:  May 15, 2023

Mark A. Gilchrist (P61741)
Michael D. Wiese (P78353)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Defendant Robert Dietzel

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

# Table of Contents

Introduction .......................................................................................................................... 1

Relevant Factual Background ............................................................................................. 2

Controlling Legal Principles and Analysis ........................................................................ 6

    I.     Standard of Review .............................................................................................. 6

    II.    Plaintiffs' Constitutional Claims Against Mr. Dietzel Fail Because He Was Not a State Actor ........................................................................................................... 7

        A.    Section 1983 Claims................................................................................... 7

        B.    Lawyers Hired to Work for Governmental Entities, Including Schools and School Boards, are Not State Actors ........................................................ 8

            i.      Mr. Dietzel is Not a State Actor Under the Public Function Test............... 10

            ii.     Mr. Dietzel is Not a State Actor Under the "State Compulsion" Test ........ 11

            iii.    Mr. Dietzel is Not a State Actor Under the "Nexus" Test ........................... 12

    III.   Alternatively, Mr. Dietzel is Entitled to Qualified Immunity ............................... 12

    IV.   Plaintiffs' Claim Under the Elliot-Larsen Civil Rights Act Against Mr. Dietzel Fails ....... 14

    V.    Plaintiffs' Gross Negligence Claim Against Mr. Dietzel Fails ............................. 15

    VI.   Plaintiffs' Negligence Claim Against Mr. Dietzel Fails ...................................... 17

Requested Relief ................................................................................................................ 18

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

i

## <u>Index of Authorities</u>

### <u>CASES</u>

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) ................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................9

*Atlanta International Ins. Co. v. Bell*, 438 Mich. 512; 475 N.W.2d 294 (1991) .........................17

*Beaty v. Hertzberg & Golden*, 456 Mich. 247; 571 NW2d 716 (1997) .......................................17

*Bernard v. Dilley*, 134 Mich. App. 375; 350 N.W.2d 887 (1984) ...............................................17

*Blackwell v. Allen*, No. 21-cv-12284, 2022 WL 791408 (E.D. Mich. March 14, 2022) ..............9

*Bose v. Bea*, 947 F.3d 983 (6th Cir. 2020) .................................................................................7

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001)...................7, 12

*Caleb v. Grier*, 598 F. App'x 227 (5th Cir. 2015)  ....................................................................8

*Chapman v. Higbee Co*., 319 F.3d 825 (6th Cir. 2003) .........................................................10, 12

*Cichewicz v. Salesin*, 306 Mich. App. 14; 854 N.W.2d 901 (2014) ...........................................16

*Coleman v. Gurwin*, 443 Mich. 59; 503 N.W.2d 435 (1993)......................................................17

*Cox v. Hausmann*., No. 3:17-cv-2420, 2018 WL 5013833 (N.D. Ohio Oct. 16, 2018)...............9

*Department of Civil Rights v. Forton*, 425 Mich. 173; 387 N.W.2d 82 (1986)..........................15

*Dorcely v. Wyandanch Union Free Sch. Dist*., 665 F. Supp. 2d 178 (E.D.N.Y. 2009) ................8

*Elezovic v. Ford Motor Co*., 472 Mich. 408; 697 N.W.2d 851 (2005) .......................................15

*Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995)......................................................... 7, 10-11

*Filarsky v. Delia*, 566 U.S. 377 (2012) ................................................................................ 13-14

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) .......................................... 6-7

*Freshwater v. Mount Vernon City Sch. Dist. Bd. of Educ*., 2010 WL 1434314 (S.D. Ohio 2010)............ 8-9

*Hanifee v. Bd. of Educ.*, Civ. No. RDB-09-2381, 2010 WL 723772 (D. Md. Feb. 24, 2010).....................8

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

*Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999) ......................................................7

*Harville v. State Plumbing & Heating, Inc.,* 218 Mich. App. 302; 553 N.W.2d 377 (1996) .....................14

*Horen v. Board of Educ. Of Toledo City School Dist.*, 594 F. Supp. 2d 833 (N.D. Ohio 2009) .............. 8-9

*Jennings v. Southwood*, 446 Mich. 125; 521 N.W.2d 230 (1994), appeal after remand, 224 Mich. App. 15; 568 N.W.2d 125 (1997), vacated in part on other grounds, 457 Mich. 884; 586 N.W.2d 925 (1998)......................................................................................................15

*Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022) ......................................................................8

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)................................................................7

*Mieras v. DeBona*, 452 Mich. 278; 550 N.W.2d 202 (1996)................................................17

*Miranda v. Clark Cnty, Nevada*, 319 F.3d 465 (9th Cir. 2003) .........................................9

*Molnar v. Care House*, 574 F. Supp. 2d 772 (E.D. Mich. 2008) ......................................10

*Pavlov v. Community Emergency Med. Serv., Inc.*, 195 Mich. App. 711; 491 N.W.2d 874 (1992)............15

*Rajapaske v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328-JDT-DKV, 2013 WL 3992523 (W.D. Tenn. Aug. 5, 2013) ................................................................9

*Scalise v. Boy Scouts of Am.*, 265 Mich. App. 1; 692 N.W.2d 858 (2005) ...................................14

*Scheuer v. Rhodes*, 416 U.S. 232; 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)..................................13

*Schied v. Ward*, No. 09-12374, 2009 WL 5171839 (E.D. Mich. Dec. 22, 2009) .........................8

*Simko v. Blake*, 448 Mich. 648; 532 N.W.2d 842 (1995) ...................................................17

*Soper v. Hoben*, 195 F.3d 845 (6th Cir. 1999) ...................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...........................................7

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)......................................................................................................2

*Watson v. Grady*, No. 09-cv-3055, 2010 WL 383507 (S.D.N.Y. Sept. 30, 2010)........................8

*West v. Atkins*, 487 U.S. 42 (1988)................................................................................7-8

*Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992)..........................................................11-12

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

iii

**STATUTES**

MCL 37.2101 ....................................................................................................6, 14

MCL 691.1401 ......................................................................................................16

MCL 691.1407(8)(a) ............................................................................................16

**U.S. CODES**

20 U.S.C. § 1681 ..................................................................................................11

42 U.S.C. § 1983 ................................................................................................. 6-7

**CODE OF FEDERAL REGULATIONS**

34 C.F.R. § 106.11 ...............................................................................................10

34 C.F.R. § 106.12 ...............................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................... *passim*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

# Introduction

There is simply no legal basis to have asserted these claims against Defendant Robert Dietzel ("Mr. Dietzel").  Plaintiffs allege a continued pattern of bullying and abuse at an elementary school, and that the various school-related Defendants (the "MSC Defendants") mishandled those issues.  But Plaintiffs have also sued Mr. Dietzel, an outside lawyer hired to conduct a Title IX Investigation.

*First*, Mr. Dietzel was acting as a private attorney in connection with the investigation.  As he was not a state actor, Plaintiffs' constitutional claims against him fail as a matter of law.  And even if he were a state actor (he wasn't), he is entitled to qualified immunity.  Plaintiffs' constitutional claims against Mr. Dietzel must be dismissed.  And, since Plaintiffs' ELCRA claim rises and falls with their federal constitutional claims, and since Plaintiffs' ELCRA claim against Mr. Dietzel fails to mention any act or omission that could be attributable to him, that claim, too, must be dismissed.

*Second*, Plaintiffs have failed to state a claim for gross negligence.  The alleged acts and omissions at issue don't involve Mr. Dietzel.  And, on its face, his thorough Title IX investigation could never rise to the high threshold of "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Plaintiffs' gross negligence claim must be dismissed.

*Third*, Plaintiffs have failed to state a claim for negligence against Mr. Dietzel.  The substance of the negligence claim involves challenging the quality of legal services Mr. Dietzel provided in connection with the investigation.  A claim against a lawyer challenging the quality of his legal services is, and can only ever be, a claim for legal malpractice.  Since the duty prong of a legal malpractice claim requires the existence of an attorney-client relationship, and Plaintiffs do not allege (and never had) an attorney-client relationship with Mr. Dietzel, their negligence (i.e., legal malpractice) claim against him fails as a matter of law.

Before explaining why he is entitled to dismissal of Plaintiffs' claims, Mr. Dietzel provides the

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

Court with the following background information to place his arguments in the appropriate context.

## **Relevant Factual Background**

This case arises out of an alleged pattern of bullying of plaintiff Jane Doe.[1]  Plaintiffs Jane Doe and her mother, "C.C.," allege that during the 2021-2022 school year, Jane was a fifth-grade student at Marcellus Elementary School.[2]  Fellow students Mary Roe and Katie Poe, also fifth graders, had bullied Jane since approximately the first grade.[3]  The bullying escalated until, on one occasion during the 2020-2021 school year, Jane Doe reported physical abuse by Mary and Katie to her teacher, who failed to take adequate steps to address the issue.[4]  Additional instances of bullying, including physical abuse, were reported to Jane Doe's teacher without adequate response.[5]  It is alleged that the teacher's failure to address the issue was the result of family connections between the bullies and staff at the school.[6]

The physical abuse continued to escalate, and in the fall of 2021 Mary and Katie began to sexually assault Jane by playing what they referred to as the "tweedle dee game" or "tickle game," which included Mary and Katie touching Jane's genitals.[7]  The abuse culminated in an October 6, 2021 incident in which Mary and Katie held Jane's hands behind her back in the bathroom and forced her to the ground.[8]  Jane and C.C. met with the school's principal, defendant Sarah Bischoff, who allegedly failed to provide them with information about the school's Title IX Policy, among other things.[9]  Instead, she disciplined Mary with a

---

[1]Generally, when considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept the plaintiff's factual allegations as true.  See *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).
[2] ECF No. 1, PageID.8, ¶ 37.
[3] ECF No. 1, PageID.8, ¶¶ 39-40.
[4] ECF No. 1, PageID.8, ¶¶ 42-44.
[5] ECF No. 1, PageID.8-9, ¶¶ 45-52.
[6] ECF No. 1, PageID.9, ¶ 55.
[7] ECF No. 1, PageID.9, ¶¶ 56-65.
[8] ECF No. 1, PageID.10-11, ¶¶ 71-80.
[9] ECF No. 1, PageID.11, ¶ 85.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

one day "lunch detention," without any further action.[10]

The Complaint then addresses an alleged series of incidents of abuse suffered at the hands of Mary and Katie by another student, Kasia Bochelen.[11]  As it relates to Jane and C.C., those allegations state that school staff told Kasia's parents that Jane's parents were aware of the sexual assaults perpetrated against Jane (which was not true).  Plaintiffs allege that it was not until Kasia's mother called C.C. and told her that Jane was a victim of Mary and Katie's abuse, that C.C. confronted Jane who confirmed that to be the case.[12] That revelation prompted a meeting the following day – November 11, 2021, between C.C., principal Bischoff, and Melinda Bohan, the school's Title IX Coordinator, where both Bischoff and Bohan claimed to have no knowledge of Jane's abuse.[13]  C.C. filed a Title IX report that day.[14]  Plaintiffs characterize the school's response as a "policy of deliberate indifference" to reports of Mary and Katie's alleged sexual misconduct over a number of years.[15]  Until this point, there are no allegations related to Mr. Dietzel, as he was not involved in any of the underlying responses to the alleged bullying, nor was he responsible for addressing it.

The formal Title IX report filed by C.C. prompted the engagement of attorney Robert Dietzel of Thrun Law Firm, P.C. as the Title IX investigator.[16]  Plaintiffs characterize that investigation as having been "deficient and deliberately indifferent."  Specifically, Plaintiffs assert that (i) Defendants failed to provide Jane Doe notice of her right to file a Title IX Complaint upon notice that she was a victim of sex

---

[10] ECF No. 1, PageID.12, ¶ 86.
[11] ECF No. 1, PageID.12-16, ¶¶ 87-122.
[12] ECF No. 1, PageID.15, ¶¶112-113.
[13] ECF No. 1, PageID.15-16, ¶¶ 115-116.
[14] ECF No. 1, PageID.16, ¶ 119.
[15] ECF No. 1, PageID.16, ¶¶ 123-134.
[16] ECF No. 1, PageID.17, ¶ 135.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

discrimination,[17] (ii) the investigation itself was untimely, as it involved a 155-day investigation period,[18] (iii) Defendants failed to investigate all allegations of sexual misconduct,[19] (iv) Defendants failed to appoint a decision maker who was not the same person as the Title IX Coordinator or Investigator,[20] (v) Defendants failed to properly apply the school's Title IX policy definitions of sexual misconduct in connection with the investigation,[21] (vi) Defendants failed to provide Jane with appropriate supportive measures,[22] and (vii) the school failed to maintain Title IX training materials on its website.[23]

With specific respect to Mr. Dietzel, Plaintiffs allege that he failed to investigate all allegations of sexual misconduct by failing to include certain allegations or interview certain witnesses who had relevant information, which were "clearly unreasonable in light of the known circumstances."[24] Plaintiffs also take issue with the fact that the Title IX decisionmaker adopted Mr. Dietzel's recommendations whole cloth, despite the fact that Mr. Dietzel's report clearly stated that the decisionmaker was under an "independent obligation to objectively evaluate relevant evidence, and thus cannot simply defer to recommendations made by the investigator in the investigative report."[25] They also take specific issue with the fact that Mr. Dietzel's investigative report omitted certain definitions from the Violence Against Women Act and the school's own Title IX policy.[26]

Plaintiffs further allege that their rights to free speech and expression were violated because when Mr. Dietzel furnished his report to C.C., he indicated that she could not copy, share, or disclose to any

---

[17] ECF No. 1, PageID.18, ¶¶ 138-143.
[18] ECF No. 1, PageID.18-19, ¶¶ 144-150.
[19] ECF No. 1, PageID.19-20, ¶¶ 151-155.
[20] ECF No. 1, PageID.20-21, ¶¶156-164.
[21] ECF No. 1, PageID.21-25, ¶¶ 165-178.
[22] ECF No. 1, PageID.25-26, ¶¶ 179-188.
[23] ECF No. 1, PageID.26-27, ¶¶ 189-191.
[24] ECF No. 1, PageID.19-20, ¶¶ 151-153.
[25] ECF No. 1, PageID.20, ¶ 158.
[26] ECF No. 1, PageID.23-24, ¶¶ 171-175.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

parties the report or related materials.[27]  Note that the U.S. Department of Education commentary to Title IX regulations provide in part:

> Recipients may require parties and advisors to refrain from disseminating the evidence (for instance, by requiring parties and advisors to sign a non-disclosure agreement that permits review and use of the evidence only for purposes of the Title IX grievance process), thus providing recipients with discretion as to how to provide evidence to the parties that directly relates to the allegations raised in the formal complaint.[28]

Plaintiffs allege that the defendants' various acts and omissions in connection with the harassment and subsequent investigation had a drastic impact on Jane's life.[29]

Importantly, a redacted version of Mr. Dietzel's Title IX Report is attached to Plaintiffs' Complaint.[30]  It shows that the matter was assigned to Mr. Dietzel on November 17, 2021, and he submitted his report on March 14, 2022.[31]  During that time, he (i) undertook 19 witness interviews,[32] (ii) reviewed several witness statements,[33] and (iii) reviewed video footage.[34]  The chronology of his work details twenty-seven separate activities, including emails, phone calls, interviews of several student witnesses and their parents, contact with law enforcement, communications with the complainant (instant Plaintiffs) and respondents advising them of their right to inspect and review all evidence collected and to submit a response to said evidence, and ultimately the production of a report.[35]

Plaintiffs have asserted various claims against the defendants.  With respect to Mr. Dietzel, Plaintiffs have asserted the following claims:

---

[27] ECF No. 1, PageID.27-28, ¶¶ 192-202.
[28] See 85 Fed. Reg. 30297-30298 (May 19, 2020).
[29] ECF No. 1, PageID.29-30, ¶¶ 203-208.
[30] ECF No. 1-2, PageID.57-66.
[31] ECF No. 1-2, PageID.57-59.
[32] ECF No. 1-2, PageID.59-60.
[33] ECF No. 1-2, PageID.60.
[34] ECF No. 1-2, PageID.60.
[35] ECF No. 1-2, PageID.57-59.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

- Count III – Denial of Right to Free Speech and Expression and Prior Restraint, 42 U.S.C. § 1983 and the First Amendment.[36]

- Count IV – Denial of Substantive Due Process, 42 U.S.C. § 1983 and the Fourteenth Amendment.[37]

- Count V – Denial of Procedural Due Process, 42 U.S.C. § 1983 and the Fourteenth Amendment.[38]

- Count VI – Denial of Equal Protection, 42 U.S.C. § 1983 and the Fourteenth Amendment.[39]

- Count VII – Violation of the Elliott-Larsen Civil Rights Act, Sex Discrimination, MCL 37.2101, *et seq.*[40]

- Count VIII – Gross Negligence, MCL 691.1407, *et seq.*[41]

- Count IX – Negligence.[42]

For the reasons set forth below, all of Plaintiffs' claims against Mr. Dietzel are ripe for dismissal under Fed. R. Civ. P. 12(b)(6).

## **Controlling Legal Principles and Analysis**

**I.     Standard of Review.**

Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for failure to state a claim on which relief can be granted. Under Fed. R. Civ. P. 12(b)(6), a count of a Complaint may be dismissed because it asserts a claim that is not cognizable as a matter of law or because it does not assert a claim that is "plausible on its face." In considering such a motion, the court must assume the truth of all factual allegations plead in the complaint.[43]     Additionally, the court must resolve all reasonable doubts and

---

[36] ECF No. 1, PageID.33-35, ¶¶ 225-238.
[37] ECF No. 1, PageID.35-36, ¶¶ 239-246.
[38] ECF No. 1, PageID.37-38, ¶¶ 247-254.
[39] ECF No. 1, PageID.38-40, ¶¶ 255-270.
[40] ECF No. 1, PageID.41, ¶¶ 271-275.
[41] ECF No. 1, PageID.42, ¶¶ 276-282.
[42] ECF No. 1, PageID.43, ¶¶ 283-288.
[43] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 249 (2009).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

inferences in the pleaders' favor and view the facts alleged in the light most favorable to the nonmoving party.[44]

## II. **Plaintiffs' Constitutional Claims Against Mr. Dietzel Fail Because He Was Not a State Actor.**

### A. Section 1983 Claims.

Plaintiffs have asserted Title IX claims against the MSC Defendants. Of course, Mr. Dietzel – a lawyer conducting an investigation – cannot be personally liable under Title IX because individuals cannot be liable under Title IX and he is not a federal funding recipient.[45] Instead, Plaintiffs use the Title IX investigation as a factual predicate to allege other claims against Mr. Dietzel.

Section 1983 provides a cause of action against a defendant who deprives a person of federally guaranteed rights under color of state law.[46] Anyone whose conduct is "fairly attributable to the State" can be sued as a state actor under § 1983.[47] "What conduct is fairly attributable to the state is a matter of normative judgment, and the criteria lack rigid simplicity."[48] So, to state a § 1983 claim premised on constitutional provisions relied upon by Plaintiffs here, they must allege that (1) a right secured by the Constitution or a federal statute has been violated (2) by a person acting under color of state law.[49] This two-prong test recognizes that the Constitution does not give rise to a claim against a private citizen. In fact, a plaintiff may not proceed with a §1983 claim against a private party "no matter how discriminatory

---

[44] See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[45] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, see, e.g., *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)"; see also *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020) ("Title IX does not provide for individual liability."); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) ("only recipients of federal funds may be liable for damages under Title IX.").

[46] 42 U.S.C. § 1983.

[47] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[48] *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001).

[49] *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995) ("A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law.") (internal quotation marks and citation omitted).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

or wrongful" the party's conduct.[50]  The Sixth Circuit has interpreted the second requirement, often called the "state action requirement," to mean that a defendant "must be acting in a state capacity to be liable under the statute."[51]

**B.  Lawyers Hired to Work for Governmental Entities, Including Schools and School Boards, are Not State Actors.**

Attorneys do not become state actors acting "under color of law" subject to §1983 claims simply by virtue of their representing state or local governments.[52]  This principle has been applied countless times in circumstances where a school hires a private lawyer.  See, e.g.:

- *Horen v. Board of Educ. Of Toledo City School Dist.*, 594 F. Supp. 2d 833 (N.D. Ohio 2009) (Public school board's law firm and firm's attorneys were not state actor by virtue of their provision of legal services to the board.).

- *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 231-214 (E.D.N.Y. 2009) (Finding that no inference could be made that the defendant, who was acting in his capacity as a privately retained attorney to the school district, was a state actor).

- *Watson v. Grady*, No. 09-cv-3055, 2010 WL 3835047, *8 (S.D.N.Y. Sept. 30, 2010) (**Ex. 1**) ("Defendant Sims cannot be held liable pursuant to § 1983 simply because she was hired as a private attorney for the [School] District.").

- *Hanifee v. Bd. of Educ.*, Civ. No. RDB-09-2381, 2010 WL 723772, at *7 (D. Md. Feb. 24, 2010) (**Ex. 2**) (Holding that law firm and attorneys "were not acting 'under color of state law' merely because they provided legal services to [school board]").

- *Schied v. Ward*, No. 09-12374, 2009 WL 5171839, at *6 (E.D. Mich. Dec. 22, 2009) (**Ex. 3**) (Explaining that, where attorney's allegedly unlawful conduct arose in the context of his representation of school district during arbitration proceedings, attorney "never acted under color of state law.").

- *Caleb v. Grier*, 598 F. App'x 227, 234 (5th Cir. 2015) (**Ex. 4**) (Holding that attorneys hired for a school's internal investigation were not liable as state actors merely for recommending that the school board terminate the plaintiffs).

- *Freshwater v. Mount Vernon City Sch. Dist. Bd. of Educ.*, 2010 WL 1434314, at *2 (S.D.

---

[50] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citations omitted).

[51] *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022) (citing *West*, 487 U.S. at 48).

[52] *Horen v. Board of Educ. Of Toledo City School Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009)

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

Ohio 2010) (**Ex. 5**) ("It is well settled that a private attorney does not become a state actor simply by representing a public body.").

The Eastern District of Michigan case *Blackwell v. Allen*[53] is instructive. There, plaintiff filed constitutional claims following contentious interactions between himself ("a self-described 'activist … who advocates for transparency in government and holding Metro Detroit municipalities accountable'"), and defendant, a private lawyer hired by the City of Hamtramck as its outside city attorney. Defendant argued for dismissal on the basis that he was not a state actor and thus cannot be subject to §1983 liability. In granting the motion to dismiss, the Court said this:

> Here, the state actor question is easily resolved by the rule that "attorneys do not become state actors by representing state or local governments." *Horen v. Bd. of Educ. Of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009) (holding that law firm and its attorneys who represented a public school board were not state actors); see also *Cox v. Hausmann.*, No. 3:17-cv-2420, 2018 WL 5013833, at *3 (N.D. Ohio Oct. 16, 2018) ("[A]ttorneys who are acting within the traditional role of a lawyer do not become sate actors simply because they are paid by a municipal public agency.") (citing *Miranda v. Clark Cnty, Nevada*, 319 F.3d 465, 468 (9th Cir. 2003)); *Rajapaske v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328-JDT-DKV, 2013 WL 3992523 at *8 (W.D. Tenn. Aug. 5, 2013) (holding that a law firm and its attorney retained by a municipal public utility were not state actors); *Freshwater v. Mt. Vernon City Sch. Dist. Bd. of Educ.*, No. 2:09-cv-464, 2010 WL 1434314, at *2 (S.D. Ohio April 8, 2010) ("It is well settled that a private attorney does not become a state actor simply by representing a public body."). Taking Blackwell's allegations as true, as the Court must do at this stage, see *Iqbal*, 556 U.S. at 678, Allen is a private attorney who represents the City of Hamtramck. Because Blackwell has not alleged facts from which the Court could reasonably infer that Allen is a state actor, he has failed to plausibly state §1983 claims against Allen.

The Sixth Circuit affirmed the District Court's ruling in *Blackwell*.[54]

Here, Plaintiffs allege that Mr. Dietzel was employed by Thrun Law Firm, P.C.[55] They cite his

---

[53] *Blackwell v. Allen*, No. 21-cv-12284, 2022 WL 791408 (E.D. Mich. March 14, 2022) (**Ex. 6**).
[54] *Blackwell v. Allen*, No. 22-1300, 2022 WL 17832191 (6th Cir. Dec. 21, 2022) (**Ex. 7**).
[55] ECF No. 1, PageID.4, ¶19.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Thrun Law Firm, P.C. bio.[56]  They attach his Title IX Investigation Report which identifies the investigator as "Robert Dietzel, Thrun Law Firm, P.C."[57]  And they attach communications from Mr. Dietzel to Plaintiffs on Thrun Law Firm, P.C. letterhead.[58]  There is no question Mr. Dietzel was a private lawyer working for a private law firm hired to undertake a single Title IX investigation.  He was not a state actor, and thus Plaintiffs' constitutional claims fail.

The reason private lawyers hired by governmental entities, including schools, do not qualify as state actors is clear when the appropriate analytical framework is utilized.  To determine whether private conduct is fairly attributable to the state, the Sixth Circuit employs three tests: (i) the public function test, (ii) the state compulsion test, and (iii) the nexus test.[59]  Applying those tests to Plaintiffs' complaint further cements that Mr. Dietzel was not a state actor.

### i.   Mr. Dietzel is Not a State Actor Under the Public Function Test.

"Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state."[60]  This test has been interpreted narrowly to cover only functions like holding elections, exercising eminent domain, and operating a company-owned town.[61]  To be a state actor under the public function test, the "power exercised by a private person must have been a power traditionally *exclusively* reserved to the state."[62]

Conducting a Title IX investigation is not a function exclusively reserved to the state.  For example, 34 C.F.R. § 106.11 provides (with emphasis) that "[e]xcept as provided in this subpart, this *part 106 applies*

---

[56] ECF No. 1, PageID.27, ¶194.
[57] ECF No. 1-2, PageID.57.
[58] ECF No. 1-4, PageID.71.
[59] *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).
[60] *Chapman v. Higbee Co*., 319 F.3d 825, 833 (6th Cir. 2003).
[61] *Id*. at 833-834.
[62] *Molnar v. Care House*, 574 F. Supp. 2d 772, 84 (E.D. Mich. 2008).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

*to every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance*."  The scope clearly exceeds government actors and reaches as far as private religious institutions, as demonstrated by the religious exemption provision in 34 C.F.R. § 106.12. Likewise, the prohibition on sexual discrimination under Title IX reaches any "education program or activity receiving Federal financial assistance" – a category far more expansive than state actors alone.  20 U.S.C. § 1681.  Of course, when non-governmental entities initiate Title IX investigations, those investigations are not left to the state.  Since the role of a Title IX investigator is not one that is exclusive to the state, Mr. Dietzel was not a state actor under the "public function" test.

### ii.  Mr. Dietzel is Not a State Actor Under the "State Compulsion" Test.

The "state compulsion" test requires demonstrating that the state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."[63]  "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives."[64]  Decisions that involve discretion *do not* implicate this test.[65]

Here, Mr. Dietzel's Title IX report includes the following:

> On January 15, 2021, the Office for Civil Rights published a Questions and Answers document regarding the new Title IX regulations, which states that an investigator may recommend findings of fact, determinations of responsibility, and remedies to the Decision Maker.  Nevertheless, the Decision Maker is under an "independent obligation to objectively evaluate relevant evidence, and thus cannot simply defer to recommendations made by the investigator or the investigative report."[66]

There is no question that the Title IX Decision Maker who received Mr. Dietzel's report was free to

---

[63] *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).
[64] *Wolotsky*, 960 F.2d at 1335.
[65] *Ellison*, 48 F.3d 192, 196.
[66] ECF No. 1-2, PageID.64; ECF No. 1, PageID.20, ¶158.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

accept or reject any or all of Mr. Dietzel's recommended findings of fact, determinations of responsibility, and remedies.  Even if they were adopted in whole, that does not remove the decisions from the Decision Maker's discretion.  Nor is there any allegation that the MSC Defendants exercised "coercive power" over Mr. Dietzel or "provided such significant encouragement" that they were ultimately making the decisions.[67]  Accordingly, Mr. Dietzel is not a state actor under the "state compulsion" test.

### iii.     Mr. Dietzel is Not a State Actor Under the "Nexus" Test.

To satisfy the nexus test, a plaintiff must allege that "there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself."[68]  Under this test, a challenged activity may be a state action "when it is entwined with governmental policies or when government is entwined in [its] management or control."[69]  To meet that burden, a plaintiff must show that the "state is intimately involved in the challenged private conduct."[70]

An analysis of Mr. Dietzel's Title IX report demonstrates that the state was *not* intimately involved in the challenged conduct, i.e., the investigation.  It shows that following the assignment on November 17, 2021, he (i) spoke with Melinda Bohan, the District's Title IX Coordinator, on December 17, 2021, (ii) interviewed defendant Sarah Bischoff on January 10, 2022, and (iii) submitted his investigation report to Melinda Bohan on March 14, 2022.[71]  There is no suggestion that the MSC Defendants were somehow "entwined" with his investigation.  Mr. Dietzel is not a state actor under the nexus test.

### III.    <u>Alternatively, Mr. Dietzel is Entitled to Qualified Immunity</u>.

Even if Mr. Dietzel were a state actor (he wasn't), he would be entitled to qualified immunity.

---

[67] *Wolotsky*, 960 F.2d at 1335.
[68] *Chapman*, 319 F.3d at 834.
[69] *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001).
[70] *Wolotsky*, 960 F.2d at 1335.
[71] ECF No. 1-2, PageID.57-59.

SHRR\5816763.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Qualified immunity protects those who, though acting under color of law, enjoy a common law right to be free from suit for violating someone's constitutional rights because Congress never intended to abrogate such immunity when it enacted section 1983.[72]

In *Filarsky v. Delia*,[73] the Supreme Court held that qualified immunity protects private attorneys who assist the government in investigating one of its employees. There, a city employed a lawyer to render professional services in furtherance of investigating one of the city fire department's employees. During the investigation, the lawyer interviewed the employee concerning a purported disability. Based on surveillance suggesting the employee performed home improvement projects incompatible with his claimed disability, the lawyer sought to compel the employee to let him inside the employee's home or bring materials and supplies outside the home for him to inspect so as to prove he wasn't performing home improvement activities.

The Court, analyzing the circumstances where a private lawyer conducts an investigation on behalf of the government, reasoned as follows:[74]

> We have called the government interest in avoiding "unwarranted timidity" on the part of those engaged in the public's business "the most important special government immunity-producing concern." *Id.*, at 409, 117 S.Ct. 2100. Ensuring that those who serve the government do so "with the decisiveness and the judgment required by the public good," *Scheuer v. Rhodes*, 416 U.S. 232, 240, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), is of vital importance regardless whether the individual sued as a state actor works full time or on some other basis.
>
> Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to "'ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service.'" *Richardson*, supra, at 408, 117 S.Ct. 2100 (quoting *Wyatt*,

---

[72] *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (explaining "[a]t common law, government actors were afforded certain protections from liability, based on the reasoning that 'the public good can best be secured by allowing officers charged with the duty of deciding upon the rights of others, to act upon their own free, unbiased convictions, uninfluenced by any apprehensions.'") (internal citations omitted).

[73] *Filarsky*, 566 U.S. 377 (2012).

[74] *Filarsky*, 566 U.S. at 390.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\5816763.v1

> supra, at 167, 112 S.Ct. 1827). The government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals.

The Court emphasized that where government employees enjoy qualified immunity, so too do private individuals.[75] And the Court held that the attorney conducting the investigation was immune from suit under §1983.[76]

Here, Plaintiff's own allegations establish Mr. Dietzel is entitled to immunity because he was a private attorney during the Title IX investigation when he allegedly violated Plaintiffs' constitutional rights. There is no meaningful difference between the facts in *Filarsky* and those alleged in this case, because regardless of the constitutional right at issue, the same principle – that immunity protects attorneys conducting investigations as much as it protects individual government employees – applies. Even if he were a state actor, Plaintiffs' claims against Mr. Dietzel are ripe for dismissal under Fed. R. Civ. P. 12(b)(6).

## IV.   Plaintiffs' Claim Under the Elliot-Larsen Civil Rights Act Against Mr. Dietzel Fails.

Because Plaintiffs cannot establish Mr. Dietzel was a state actor, the claim they asserted under the Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.*, fails as a matter of law.[77]  See, e.g., *Scalise v. Boy Scouts of Am.*,[78] ("Our Supreme Court has held this clause to be coextensive with the Equal Protection Clause of the United States Constitution. *Harville v. State Plumbing & Heating, Inc.,* 218 Mich. App. 302, 305–306, 553 N.W.2d 377 (1996). Thus, the Michigan Constitution, like the United States Constitution, only protects individuals from discriminatory 'state action.'"); *Bazetta v. Dep't of Corr. Dir.*,[79] ("In this case, we need not separately evaluate plaintiffs' civil rights claim because we have already rejected their

---

[75] *Id.* at 391-93.
[76] *Id.* at 394.
[77] *Scalise v. Boy Scouts of Am.*, 265 Mich. App. 1, 20; 692 N.W.2d 858 (2005).
[78] *Scalise*, 265 Mich. App. at 20.
[79] *Bazetta v. Dep't of Corr. Dir.*, 231 Mich. App. 83, 91; 585 N.W.2d 758 (1998).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

14

equal protection claim. It is unnecessary to determine whether the DOC is exempt from the CRA under §

303. The standard for evaluating plaintiffs' civil rights claim is 'coterminous with constitutional equal

protection standards.' *Forton, supra* at 175, 387 N.W.2d 821.).  Moreover, none of the alleged violations

of the ELCRA relate to Mr. Dietzel's conduct.[80]  Plaintiffs' ELCRA claim against Mr. Dietzel must be

dismissed.

Further, ELCRA governs, among others, "employers" and "educational institutions."[81]  ELCRA

defines an "employer" as a "person who has 1 or more employees, and includes an agent of that person."[82]

Individuals can be considered "employers" under ELCRA if they meet the definition.[83]  It is clear from the

pleadings that Mr. Dietzel was neither an "employer" as that term is defined, nor was he an "educational

institution." He was acting at all times as a private attorney employed by non-party Thrun Law Firm, not

the MSC Defendants.  Accordingly, Plaintiffs cannot impute ELCRA liability to Mr. Dietzel individually.

Their claim against him must be dismissed.[84]

**V.      Plaintiffs' Gross Negligence Claim Against Mr. Dietzel Fails.**

Historically, gross negligence was intended as a plaintiff's doctrine to avoid the bar of contributory

negligence.[85]  In *Jennings v Southwood*,[86] the Supreme Court rejected the common-law definition of gross

negligence that had been created in response to the harsh consequences of contributory negligence and

---

[80] ECF No. 1, PageID.41, ¶274.

[81] See MCL §§37.2202, 37.2402.

[82] MCL §37.2102.

[83] See *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 423-424; 697 N.W.2d 851 (2005) (Concluding that the "inclusion of an 'agent' within the definition of the word 'employer' is not limited to establishing vicarious liability for the agent's employer, but in fact means agents are considered employers.").

[84] See *Mulbah v Detroit Motor Co.*, 97 F. App'x 617, 619 (6th Cir. 2004) (Summary judgment upheld because no individual liability under ELCRA for non-employers).

[85] *Pavlov v. Community Emergency Med. Serv., Inc.*, 195 Mich. App. 711, 718; 491 N.W.2d 874 (1992).

[86] *Jennings v. Southwood*, 446 Mich. 125; 521 N.W.2d 230 (1994), appeal after remand, 224 Mich. App. 15; 568 N.W.2d 125 (1997), vacated in part on other grounds, 457 Mich. 884; 586 N.W.2d 925 (1998).

SHRR\5816763.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

formulated a new standard – it adopted the definition employed by the legislature in the Government Tort Liability Act.  Thus, under Michigan law, in the context of civil liability where a defendant's conduct is alleged to be grossly negligent, "Michigan courts have generally applied the standard articulated in the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., which defines gross negligence as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'   MCL 691.1407(8)(a)."[87]

Although Plaintiffs' gross negligence claim is asserted against all defendants, none of the allegations relate to any alleged act or omission of Mr. Dietzel.  Specifically, Plaintiffs' allegations in support of their gross negligence claim say this:

> Defendants breached their duty to Jane Doe by failing to notify Jane Doe's parents when thy first learned that Jane Doe had been the victim of sexual assault, failing to properly respond to Jane Doe's reports of sex discrimination, failing to provide her with information about supportive measures, failing to ensure that the limited supportive measures they provided were actually implemented, failing to timely provide her with information on how to make a formal complaint of sex discrimination, and failing to adequately train and supervise their staff with respect to the handling of complaints of sex discrimination.[88]

None of those allegations relate in any way to Mr. Dietzel or his Title IX investigation.  And, there is no chance a jury could ever find that Mr. Dietzel's investigation, which included 19 witness interviews (including students and parents), review of several witness statements, review of video footage, emails, phone calls, contact with law enforcement, communications with the Plaintiffs to permit them an opportunity to review and respond to the evidence collected, and ultimately the production of a thorough report, could *ever* constitute "conduct so reckless as to demonstrate a substantial lack of concern for whether

---

[87] *Cichewicz v. Salesin*, 306 Mich. App. 14, 28-29; 854 N.W.2d 901 (2014) (emphasis added).
[88] ECF No. 1, PageID.42, ¶279.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

an injury results."  Plaintiffs' gross negligence claim fails as a matter of law and should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6).

## VI.    **Plaintiffs' Negligence Claim Against Mr. Dietzel Fails**.

Plaintiffs' negligence claims challenge the quality of legal services provided by Mr. Dietzel in

connection with his Title IX Investigation.  When a plaintiff challenges the quality of legal services provided

by an attorney, "the tort is one for malpractice and malpractice only."[89]  "To establish a tort, one must first

establish a duty to the claimant imposed on the alleged tortfeasor."[90]  In order to prove a case for legal

malpractice, the Plaintiff must prove "(1) the existence of an attorney-client relationship; (2) negligence in

the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4)

the fact and extent of the injury alleged."[91]  To assert a legal malpractice claim a plaintiff must first establish

the existence of an attorney-client relationship giving rise to a duty to avoid negligent conduct.[92]  As a

general rule, absent "unique" or "special" circumstances which do not apply here,[93] "a legal malpractice

action may be brought only by a client."[94]  This rule "exists to ensure the inviolability of the attorney's duty

of loyalty to his client."[95]

Here, there is no allegation that Mr. Dietzel was ever retained by Plaintiffs or otherwise had an

attorney-client relationship with them.  In fact, the Complaint asserts that "MCS initiated a Title IX

---

[89] *Bernard v. Dilley*, 134 Mich. App. 375, 379; 350 N.W.2d 887 (1984).
[90] *Id.*
[91] *Simko v. Blake*, 448 Mich. 648, 655; 532 N.W.2d 842 (1995).
[92] *Coleman v. Gurwin*, 443 Mich. 59, 63; 503 N.W.2d 435 (1993).
[93] *Mieras v. DeBona*, 452 Mich. 278, 297; 550 N.W.2d 202 (1996).
[94] *Beaty v. Hertzberg & Golden*, 456 Mich. 247, 253; 571 NW2d 716 (1997).  See generally, *Atlanta International Ins. Co. v. Bell*, 438 Mich. 512, 518; 475 N.W.2d 294 (1991) ("[T]he general rule of law . . . dictates that 'an attorney will be held liable for . . . negligence only to his client, and cannot, in the absence of special circumstances, be held liable to anyone else.'").
[95] *Atlanta International Ins. Co.*, 438 Mich. at 518-519.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

investigation and assigned Defendant Dietzel as the investigator."[96]  Since (i) a claim challenging the quality of an attorney's legal services is – and can only ever be – a claim for legal malpractice, (ii) a legal malpractice claim requires the existence of an attorney-client relationship to satisfy the duty element, and (iii) Mr. Dietzel never had an attorney-client relationship with Plaintiffs, their negligence claim fails as a matter of law under Fed. R. Civ. P. 12(b)(6).

## __Requested Relief__

Based on the foregoing, Mr. Dietzel respectfully requests this Honorable Court grant this Motion, issue an Order dismissing Plaintiffs' claims against him pursuant to Fed. R. Civ. P. 12(b)(6), and grant any other relief deemed appropriate under the circumstances.

Date:  May 15, 2023

By: _/s/ Mark A. Gilchrist_____
    Mark A. Gilchrist (P61741)
    Michael D. Wiese (P78353)
    SMITH HAUGHEY RICE & ROEGGE
    Attorneys for Defendant Robert Dietzel
    100 Monroe Center, N.W.
    Grand Rapids, MI 49503
    616-774-8000
    mgilchrist@shrr.com
    mwiese@shrr.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[96] ECF No. 1, PageID.17, ¶135.

SHRR\5816763.v1