# Exhibit 6

2022 WL 791408
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern Division.

Charles BLACKWELL, Plaintiff,
v.
James Peter ALLEN, et al., Defendants.

Civil Action No. 21-cv-12284
|
Signed 03/14/2022

**Attorneys and Law Firms**

Hannah Rachael Fielstra, Ernst Charara & Lovell, Detroit, MI, for Plaintiff.

Lindsey A. Peck, Theresa M. Asoklis, Collins Einhorn Farrell PC, Southfield, MI, for Defendant James Peter Allen.

Marc A. Deldin, Schenk & Bruetsch, PLC, Grosse Pointe Farms, MI, for Defendant City of Hamtramck.

**OPINION & ORDER (1) GRANTING DEFENDANT JAMES PETER ALLEN'S MOTION TO DISMISS (Dkt. 14) AND (2) GRANTING DEFENDANT THE CITY OF HAMTRAMCK'S MOTION TO DISMISS (Dkt. 15)**

MARK A. GOLDSMITH, United States District Judge

*1 Plaintiff Charles Blackwell brings this lawsuit against Defendants the City of Hamtramck and James Peter Allen. This matter is before the Court on Allen's motion to dismiss (Dkt. 14) as well as the City's motion to dismiss (Dkt. 15). For the following reasons, the Court grants Allen's motion and grants the City's motion.[1]

**I. BACKGROUND**

This lawsuit arises from a spat between Blackwell and Allen. Blackwell, who uses a wheelchair because his lower extremities are paralyzed, is a self-described "activist ... who advocates for transparency in government and holding Metro Detroit municipalities accountable by engaging with local municipalities on social media, attending city council meetings, and filing Freedom of Information Act ("FOIA") requests with various public bodies." Am. Compl. ¶¶ 2, 24 (Dkt. 12). According to Blackwell, Allen is an attorney and his law firm, Allen Brothers, PLLC, "acts as the city attorney for ... the City of Hamtramck." Id. ¶ 12. Allen concedes that he "occasionally acts as City Attorney for the City of Hamtramck," but disputes that he acted in his official capacity as City Attorney during the subject events that led to this lawsuit, which are described below. Allen Mot. to Dismiss at 1.

Blackwell filed several FOIA requests "seeking various sources of information involving ... Allen Brothers, PLLC and its contract with the City of Hamtramck...." Am. Compl. ¶ 15. On August 16, 2021, Allen denied one of the FOIA requests, signing the FOIA denial letter as "Hamtramck City Attorney." Id. ¶¶ 17–18.

Two days later, from an email account using the pseudonym "Susana Hamad,"[2] Blackwell sent a meme[3] to Allen's Allen Brothers email address. Id. ¶¶ 19–20; Emails re Meme at PageID.131 (Dkt. 12-2).[4] The meme depicts the faces of Allen and two other male Allen Brothers attorneys attached to the bodies of women wearing skirts and holding briefcases. Am. Compl. ¶ 21; Emails re Meme at PageID.131. Text over Allen's face labels him as "Hamtramck City Attorney James P. Allen Sr.," and text at the top of the meme states: "Political Parody and Satire." Id.[5]

*2 Allen, apparently surmising that the email had been sent from Blackwell, Am. Compl. ¶ 25, sent three responses, id. ¶¶ 26–34; Emails re Meme at PageID.130–132. In his response emails, Allen mocked Blackwell's inability to use his lower extremities, often with quite vulgar language. For instance, Allen called Blackwell "Chuck Who [sic] can't ****," Am. Compl. ¶ 26; Emails re Meme at PageID.130, and told Blackwell: "God recognized evil and sentenced you to sit while people like me run free and spread our DNA into the universe and you CAN'T," Emails re Meme at PageID.130. Blackwell contends that Allen's emails suggest that Allen billed the City for his emails to Blackwell, and that invoices prove it. Am. Compl. ¶¶ 31, 33.[6]

On August 24, 2021, Blackwell (again from the Susana Hamad email address) emailed the Michigan Attorney Discipline Board Executive and Deputy Director, attaching Allen's mocking emails and calling for an investigation

into Allen's conduct. Am. Compl. ¶ 38; Email to Attorney Discipline Board (Dkt. 12-3).

Subsequently, Blackwell (still using the Susana Hamad email address) emailed to Allen's Allen Brothers email address a copy of the email that Blackwell had sent to the Attorney Discipline Board. Am. Compl. ¶ 39; 8/24/21 Emails (Dkt. 12-4). Blackwell alleges that Allen responded to this email "in his capacity as Hamtramck City Attorney and using the power of his office." Am. Compl. ¶ 40. In his response, Allen stated: "You'll be going under oath ... after your ISP [internet service provider] answers my subpoena." 8/24/21 Emails at PageID.137. Blackwell contends that Allen's response was a "threat[ ] to subpoena Mr. Blackwell's ISP" as well as a "threat[ ] to depose [Blackwell]." Am. Compl. ¶ 40.

According to Blackwell, as a result of Allen's actions, Blackwell has been "deterred from further engaging in activity protected by the Constitution, including but not limited to: attending city council meetings where Defendant Allen would be present (either in person or via Zoom), requesting documents via FOIA of which Defendant Allen or the City of Hamtramck is the subject, and engaging in anonymous political satire and free speech." Id. ¶ 42.

In this action, Blackwell brings two 42 U.S.C. § 1983 claims against Defendants: a Fourteenth Amendment equal protection claim, id. ¶¶ 44–50, and a First Amendment retaliation claim, id. ¶¶ 58–69. Blackwell also brings an Americans with Disabilities Act (ADA) claim against the City. Id. ¶¶ 44–50.

## II. ANALYSIS[7]

The Court addresses in turn Blackwell's claims against Allen and the City. As the analysis below demonstrates, Blackwell's claims do not survive Defendants' motions to dismiss.

### A. Allen's Motion

Allen asks the Court to dismiss Blackwell's § 1983 claims against him because Allen was not a state actor when he sent the subject emails to Blackwell, and, therefore, Allen cannot be subject to § 1983 liability. Allen Mot. to Dismiss at 6–13. Allen further argues that, even if he were a state actor, Blackwell's § 1983 claims still fail because Allen is entitled to qualified immunity. Id. at 13–25. Because the Court agrees with Allen's former argument, it need not address the latter argument.

*3 To state a cause of action under § 1983, a plaintiff must allege the deprivation of a constitutional right by a person acting "under color of state law." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155–157 (1978). An individual acts "under color of law" when exercising "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Polk Cnty. v. Dodson, 454 U.S. 312, 317–318 (1981) (punctuation modified).

Here, the state actor question is easily resolved by the rule that "attorneys do not become state actors by representing state or local governments." Horen v. Bd. of Educ. of Toledo City Sch. Dist., 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009) (holding that law firm and its attorneys who represented a public school board were not state actors); see also Cox v. Hausmann, No. 3:17-cv-2420, 2018 WL 5013833, at *3 (N.D. Ohio Oct. 16, 2018) ("[A]ttorneys who are acting within the traditional role of a lawyer do not become state actors simply because they are paid by a public agency.") (citing Miranda v. Clark Cnty, Nevada, 319 F.3d 465, 468 (9th Cir. 2003)); Rajapaske v. Baker Donelson Bearman Caldwell & Berkowitz, P.C., No. 13-2328-JDT-DKV, 2013 WL 3992523, at *8 (W.D. Tenn. Aug. 5, 2013) (holding that a law firm and its attorney retained by a municipal public utility were not state actors); Freshwater v. Mt. Vernon City Sch. Dist. Bd. of Educ., No. 2:09-cv-464, 2010 WL 1434314, at *2 (S.D. Ohio April 8, 2010) ("It is well settled that a private attorney does not become a state actor simply by representing a public body."). Taking Blackwell's allegations as true, as the Court must do at this stage, see Iqbal, 556 U.S. at 678, Allen is a private attorney who represents the City of Hamtramck. Because Blackwell has not alleged facts from which the Court could reasonably infer that Allen is a state actor, he has failed to plausibly state § 1983 claims against Allen.

Accordingly, Allen's motion to dismiss is granted.

### B. The City's Motion

Blackwell's § 1983 claims and the ADA claim against the City fare no better and must be dismissed.

**i. Section 1983**

Where the plaintiff does not establish an underlying constitutional violation by a municipal employee or official, there can be no § 1983 liability against the municipality. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); see also Morris v. City of Detroit, No. 17-13415, 2019 WL 9904322, at *3 (E.D. Mich. Mar. 20, 2019) (holding that a plaintiff's municipal liability claims failed because the individual who committed the alleged constitutional violation was not a state actor). Blackwell brings § 1983 claims against the City based on alleged constitutional violations committed by Allen. As discussed above, Allen cannot face § 1983 liability because he does not qualify as a state actor. As a result, Blackwell's § 1983 claims against the City likewise fail. These claims, therefore, are dismissed.[8]

### ii. The ADA

Blackwell's ADA claim against the City fails for a similar reason. Pursuant to Title II of the ADA, no "qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA's definition of "public entity" does not include private individuals or private entities. Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901, 904 (6th Cir. 2004) (explaining that "public entity" includes "any state or local government"). Thus, if Blackwell had brought his ADA claim directly against Allen, it would clearly fail, as a private lawyer is not a public entity, even where the lawyer represents a public entity. See Horen, 594 F. Supp. 2d at 846 (citing Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 589 (1999)) (other citations omitted).

*4 Blackwell, however, was careful to nominally bring his ADA claim against just the City, which clearly meets the definition of a public entity. But this should not change the result. Blackwell alleges that the City's ADA liability is premised on the actions of Allen as the City's "agent." Am. Compl. ¶¶ 54–57 (alleging that Allen is an "agent" of the City; that "[a]s a result of ... Allen's actions, [Blackwell] is being denied the benefits of other non-disabled citizens and being subjected to discrimination because of his disability"; and that the City "through its agent ... Allen, acted intentionally, willfully and in reckless disregard of [Blackwell's] rights"). However, private lawyers representing public entity clients "do not act as agents of the state." Robinson v. State of Michigan, No. 1:09-cv-564, 2009 WL 2567171, at *9 (W.D. Mich. Aug. 4, 2009), R&R adopted by 2009 WL 3011225 (W.D. Mich. Sept. 16, 2009) (citing Polk, 454 U.S. at 321; Adam v. Morris, 90 F. App'x 856, 857 (6th Cir. 2004)); see also Horen, 594 F. Supp. 2d at 844 (stating that a public entity's retained attorney is "far from being an official or even a government employee," and, therefore, the attorney is "not [an] agent[ ] of the State"). The Sixth Circuit has recently clarified that a public entity cannot be held vicariously liable for an agent's violations of the ADA, see Jones v. City of Detroit, Mich., 20 F.4th 1117, 1122 (6th Cir. 2021), and so it would make no sense to permit the City to be held liable for the actions of Allen, a non-agent.

The Court's conclusion is bolstered by the fact that "the proper defendant under a Title II claim is the public entity or an official acting in his official capacity." Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Suing an official in his or her official capacity is the functional equivalent of directly suing the municipality itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). A public entity's retained counsel "are not agents of the State" and, therefore, "cannot be sued in their official capacity." Horen, 594 F. Supp. 2d at 844. It follows that because Blackwell could not sue Allen in his official capacity—the functional equivalent of directly suing the City—Blackwell should likewise be prohibited from bringing a Title II claim against the City.

Accordingly, Blackwell's ADA claim must be dismissed.[9]

### III. CONCLUSION

For the foregoing reasons, Allen's and the City's motions to dismiss (Dkts. 14, 15) are granted.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 791408

Footnotes

1   Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing for Allen's motion includes Blackwell's response (Dkt. 20) and Allen's reply (Dkt. 22). The briefing for the City's motion includes Blackwell's response (Dkt. 21) and the City's reply (Dkt. 23).

2   Allen contends that Blackwell chose an Arabic pseudonym because Allen himself is "part Arabic." Allen Mot. to Dismiss at 2 n.4.

3   A meme is "an image ... that is passed very quickly from one internet user to another, often with slight changes that make it humorous." Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/meme#:~:text=meme-,noun,often (last visited Mar. 4, 2022).

4   Generally, when resolving a motion to dismiss, a court cannot consider matters outside the complaint, without converting the motion to dismiss to one for summary judgment. Rondigo, L.L.C. v. Township of Richmond, 641 F.3d 673, 680–681 (6th Cir. 2011). However, a court may consider exhibits attached to the complaint, public records, and exhibits that are "referred to in the complaint and central to the claims contained therein" without converting the motion to dismiss to one for summary judgment. Id. Accordingly, the Court may consider the exhibits attached to Blackwell's amended complaint—including the emails regarding the meme—without converting Defendants' motions into motions for summary judgment.

5   According to Allen, "[t]he meme also degradingly enlarges his Jewish colleague's nose," and "[a] subsequent meme yellows his African American colleague's teeth." Allen Mot. to Dismiss at 2 n.4.

6   Allen, on the other hand, contends that the invoices prove that he did not bill the City for his time emailing Blackwell. Allen Mot. to Dismiss at 3. This dispute is ultimately immaterial to the Court's resolution of the motions to dismiss, and, therefore, the Court will not weigh in on it.

7   To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

8   Because Blackwell's § 1983 claims fail for this reason, the Court need not address the merits of the City's argument that Blackwell has failed to identify a City policy or custom that caused the alleged violation of his constitutional rights, as is required to impose municipal liability. City Mot. to Dismiss at 10–15.

9   The Court, therefore, need not address the City's arguments that Blackwell's ADA claim should be dismissed due to Blackwell's failure to plead that (i) the City took any action against Blackwell because of his disability or (ii) Allen knew that Blackwell was the sender of the meme. City Mot. to Dismiss at 6, 9.

---

**End of Document**                                         © 2023 Thomson Reuters. No claim to original U.S. Government Works.