# Exhibit 7

Case 1:23-cv-00255-PLM-RSK ECF No. 12-7, PageID.271 Filed 05/15/23 Page 2 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

2022 WL 17832191
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Charles BLACKWELL, Plaintiff-Appellant,
v.
James P. ALLEN, Sr. et al., Defendants-Appellees.

No. 22-1300
|
FILED December 21, 2022

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**Attorneys and Law Firms**

Hannah Fielstra, Ernst Charara & Lovell, Detroit, MI, for Plaintiff-Appellant.

Lindsey A. Peck, Collins Einhorn Farrell, Southfield, MI, for Defendant-Appellee James P. Allen, Sr.

Thomas P. Bruetsch, Schenk & Bruetsch, Detroit, MI, for Defendant-Appellee City of Hamtramck, MI.

Before: BOGGS, KETHLEDGE, and WHITE, Circuit Judges.

OPINION

HELENE N. WHITE, Circuit Judge.

**\*1** In this civil-rights suit alleging violations of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Title II of the Americans with Disabilities Act (ADA), Plaintiff-Appellant Charles Blackwell appeals the district court's dismissal of his complaint for failure to state a claim. We affirm.

**I.**

For purposes of this appeal, we take as true the facts alleged in Blackwell's amended complaint. *Rudd v. City of Norton Shores*, 977 F.3d 503, 507 (6th Cir. 2020). Blackwell is an activist "who advocates for transparency in government and holding Metro Detroit municipalities accountable by engaging with local municipalities on social media, attending city council meetings, and filing Freedom of Information Act ('FOIA') requests with various public bodies." R. 12, PID 112. A drive-by shooting paralyzed Blackwell's lower extremities several years ago, confining him to a wheelchair.

Defendant-Appellee James Allen is an attorney. His law firm, Allen Brothers, PLLC, "acts as the city attorney" for Defendant-Appellee City of Hamtramck, Michigan, (the City) pursuant to a contract, and Allen regularly holds himself out as the Hamtramck city attorney. PID 114.

Blackwell filed several FOIA requests with the City seeking information on its contract with Allen Brothers, PLLC, as well as information on members of the Hamtramck City Council. Allen personally denied one of these requests on August 16, 2021, writing that there were "ample grounds to DENY your request on its face" and signing the letter as "Hamtramck City Attorney." *Id.*

Two days later, on August 18, 2021, Blackwell emailed a "parody 'meme' "[1] to several City officials. PID 115. The meme—which Blackwell described as "a criticization of Allen and [his law partner David] Jones"—depicted the heads of Allen, Jones, and a third man attached to women's bodies. *Id.* All three are standing outside the Frank Murphy Hall of Justice in a skirt and heels, with long blonde hair, holding a briefcase. Allen is identified as "Hamtramck City Attorney." *Id.* The bottom of the meme is labeled "ALLEN BROTHERS PLLC." *Id.* The top is labeled "POLITICAL PARODY AND SATIRE." *Id.* No further context is given. Blackwell sent the meme from an anonymous account using the name "Susana Hamad" and gave no indication that he was its true author. *Id.*; R. 12-2, PID 131. Blackwell copied Allen on the email using the address "JamesAllen@allenbrotherspllc.com," which Allen uses for all business on behalf of the City. R. 12, PID 116.

Allen, apparently suspecting that Blackwell was behind the email, responded to it with several personal attacks on Blackwell's character and physical disability.[2] Among other things, Allen mocked Blackwell's inability to walk or have sexual intercourse.

**\*2** Several hours later, at 12:43 AM on August 19, 2021, Allen responded to the meme email a second time. He again insulted Blackwell's disability, calling him "Wheelboy" and taunting that "God recognized evil and sentenced you to sit

Case 1:23-cv-00255-PLM-RSK ECF No. 12-7, PageID.272 Filed 05/15/23 Page 3 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

while people like me run free and spread our DNA into the universe like you CAN'T." R. 12, PID 117; R. 12-2, PID 130. He continued:

> The more you play, moreover, the better for me. And you teaming up with your crusading friends? That's music to my ears ... We love people like you. My children thank you, in fact, for the college money ... From the bottom of my satisfied self's contented heart, thank you for the many hours you keep my colleagues occupied. The Allen-Jones Family educational scholarship fund thanks you as well.

R. 12-2, PID 130. Roughly a half hour later, at 1:11 AM, Allen sent a third reply. He "dare[d]" Blackwell to "send these emails to people and say I should be cancelled for dogging a pathetic little wheelboy like you," and told him:

> Saw you seated today and yesterday and will see you seated for as long as the Good Lord sentenced you ... [Y]ou surely deserved that bullet God sent to put you where you are when you read this and where you will ALWAYS be, haha, unable to be the man you ever were. How fitting for such a coward.

R. 12, PID 119; R. 12-2, PID 132.

Using the Susana Hamad email address, Blackwell sent a copy of these emails to the Michigan Attorney Discipline Board (the Discipline Board) on August 24, 2021, and requested that the Discipline Board investigate Allen's conduct. He did not sign the email or identify himself.

Blackwell sent a copy of his email to the Discipline Board to Allen at his law-firm email address. Allen quickly replied[3] with more jabs at Blackwell's disability, and told Blackwell: "Your complaint doesn't exist until a flesh and blood Susana materializes ... However, if the request for investigation comes, we'll have what we need to subpoena your ISP and verify what we already know." R. 12-4, PID 136. A few minutes later, Blackwell (still using the Susana Hamad email address) responded to Allen with a picture of Rudy Giuliani bearing the caption: "Law license should be suspended like his." PID 137. Allen retorted (in the same email thread): "We'll see, Kev. If it happens, it will be the first time someone got suspended on a complaint from someone who doesn't exist. You'll be going under oath either way after your ISP answers my subpoena." *Id.*

According to Blackwell, Allen's conduct "mocking his disability, taunting him with comments about what [Allen] is able to do and what [Blackwell] cannot, asserting that [Blackwell] deserved the bullet that paralyzed [him], and threatening to subpoena [his] ISP and depose him" deterred Blackwell from "attending city council meetings," "requesting documents via FOIA," and "engaging in anonymous political satire and free speech." R. 12, PID 120. He filed suit in federal district court, alleging that Allen violated 42 U.S.C. § 1983 by discriminating against him on the basis of disability, in violation of the Equal Protection Clause of the Fourteenth Amendment (Count 1); that the City, through Allen as its agent, discriminated against him on the basis of disability, in violation of Title II of the ADA (Count 2); and that Allen retaliated against him for exercising his First Amendment free speech rights, again in violation of 42 U.S.C. § 1983 (Count 3).

*3 Allen and the City both sought dismissal for failure to state a claim, which the district court granted on March 14, 2022. Addressing Allen's motion first, the district court noted that, to state a cause of action under Section 1983, a plaintiff must allege deprivation of a constitutional right by a state actor. It reasoned that "[h]ere, the state actor question is easily resolved by the rule that 'attorneys do not become state actors by representing state or local governments.' " R. 25, PID 407. It continued: "Allen is a private attorney who represents the City of Hamtramck. Because Blackwell has not alleged facts from which the Court could reasonably infer that Allen is a state actor, he has failed to plausibly state [Section] 1983 claims against Allen. Accordingly, Allen's motion to dismiss is granted." PID 408. The district court dismissed the Section 1983 claims against the City because Blackwell failed to establish an underlying constitutional violation by a municipal employee or official.[4]

The district court held that Blackwell's claim under Title II failed for similar reasons—the complaint premised all ADA liability on Allen's actions as the City's "agent," and "private lawyers representing public entity clients 'do not act as agents of the state.' " PID 409. The district court further explained that "[t]he Sixth Circuit has recently clarified that a public entity cannot be held vicariously liable for an agent's violations of the ADA, *see Jones v. City of Detroit, Mich.*, 20 F.4th 1117, 1122 (6th Cir. 2021), and so it would make no sense to permit the City to be held liable for the actions of Allen, a non-agent." PID 409-410. The district court accordingly dismissed Blackwell's ADA claim against the City.

Blackwell now appeals.

Case 1:23-cv-00255-PLM-RSK  ECF No. 12-7, PageID.273  Filed 05/15/23  Page 4 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

## II.

We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim. *Lambert v. Hartman*, 517 F.3d 433, 438–39 (6th Cir. 2008). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

## III.

We begin with the district court's dismissal of the Section 1983 claims against Allen. To state a claim under Section 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). We have interpreted the second requirement, often called the "state action requirement," to mean that a defendant "must be acting in a state capacity to be liable under the statute." *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022) (citing *West*, 487 U.S. at 48).

The conduct that Blackwell claims violated his federal rights —"mocking his disability, taunting him with comments about what [Allen] is able to do and what [Blackwell] cannot, asserting that [Blackwell] deserved the bullet that paralyzed [him], and threatening to subpoena [Blackwell's] ISP and depose him"—occurred within the confines of Allen's emails. R. 12, PID 120. Accordingly, this appeal comes down to whether Blackwell plausibly alleged that these emails were "fairly attributable" to the City. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Because he did not, the district court properly granted Allen's motion to dismiss.

### A. Allen as a Private Actor

*4 On appeal, Blackwell claims that the district court "entirely ignored" his argument that Allen "could still act under color of law as a private actor, thus making him liable for his actions under [Section] 1983." Appellant Br. at 20. He argues that state action can be inferred from the fact that Allen previously denied his FOIA request, regularly attends city-council meetings, and responds to emails directed to other Hamtramck officials.

The Supreme Court has identified three tests for discerning whether a private party's conduct is attributable to the state: (1) the public-function test, (2) the state-compulsion test, and (3) the nexus test. *Lindke*, 37 F.4th at 1202 (citing *Lugar*, 457 U.S. at 939; and *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc)). Blackwell does not plausibly allege state action under any of these tests.

### 1.

"Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman*, 319 F.3d at 833. This test has been interpreted narrowly to cover only functions like holding elections, exercising eminent domain, and operating a company-owned town. *Id.* at 833-34. Responding to emails is not comparable to these functions, considering that the general public routinely engages in such activity. *Cf. Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (holding that a non-profit corporation contracted by the county was not a state actor under the public-function test because "providing mental health services has not been a power which has traditionally been exclusively reserved to the state"); *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 545 (1st Cir. 2021) (holding that a private company contracted to run a low-income housing project was not a state actor under the public-functions test because the "the provision of low-income housing has never been exclusive to the government"). Blackwell thus fails to plausibly allege state action under the public-function test.

### 2.

The state-compulsion test requires that the state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335. Decisions that involve discretion do not implicate this test. *See Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995) (holding that physicians were not state actors under a Tennessee statute because the statute, despite allowing only an officer or licensed physician to authorize an involuntary commitment, did not "compel" or "encourage" such decisions). Blackwell does not allege that city officials coerced, pressured, or even encouraged Allen to send the derogatory emails, nor that any city policy required Allen

Case 1:23-cv-00255-PLM-RSK   ECF No. 12-7, PageID.274   Filed 05/15/23   Page 5 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

to respond in such a manner. He therefore fails to plausibly allege state action under the state-compulsion test.

3.

Under the nexus test, a plaintiff must allege that "there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834. To make this determination, we ask whether a defendant's actions are either subject to the government's "management or control" or "entwined with governmental policies." *Lindke*, 37 F.4th at 1203 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

**\*5** Blackwell does not allege that the City instructed Allen to respond to his emails, oversaw the drafting process, or approved Allen's responses before they were sent. The main nexus to state authority posited by the complaint is that Allen responded to Blackwell from the same email address that he uses for "all business on behalf of the City of Hamtramck." R. 12, PID 116. But this fact does not establish the level of management or control required to satisfy the nexus test. *Cf. Marie v. Am. Red Cross*, 771 F.3d 344, 363 (6th Cir. 2014) (rejecting the plaintiffs' argument that they satisfied the nexus test "by pleading that the Red Cross [was] financially dependent on government assistance and that they regularly partner with state and local governments in disaster relief").

Further, to state a claim under this test, Blackwell must allege a sufficiently close nexus "between the state and the *challenged action*." *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007) (emphasis added). Here, the challenged actions are not Allen's denial of Blackwell's FOIA request, or Allen's attendance at city-council meetings, but Allen's allegedly retaliatory and discriminatory emails. There are no allegations in the complaint that the City supervised or approved these emails. Unlike the various officials Blackwell emailed—who all had City email addresses—the complaint alleges that Allen communicated with a personal account connected to his private law firm, sent some emails directly from his phone, and sent most outside regular city business hours, two after midnight. Blackwell fails to plausibly explain how the City exerted any control over this conduct. *Cf. Marie*, 771 F.3d at 363 (holding that plaintiffs had failed to plead state action under the nexus test where the challenged actions were the Red Cross's failure to promote plaintiffs and ultimate decision to terminate them, but the complaint contained no allegations "that the State had any connection to these types of personnel decisions"); *see also Lansing v. City of Memphis*, 202 F.3d 821, 832-33 (6th Cir. 2000) (holding that a private festival's decision to expel a street preacher could not be attributed to the state—despite the fact that the festival received public funds, adhered to state regulations, was held on leased public land, and utilized local law enforcement to remove the preacher—because the state did not dictate the festival's decisions in this regard).

Nor does Blackwell plausibly allege that Allen's actions were entwined with a governmental policy. The complaint does not claim that Allen sent Blackwell discriminatory or retaliatory emails in the context of discussing ongoing city litigation or official city business. Rather, Blackwell alleges that *he* emailed Allen—and others—a meme of Allen's head on a woman's body. According to the complaint, this meme prompted Allen to respond—in that same email chain—with his own objectionable emails. Blackwell likewise alleges that *he* copied Allen on his email to the Discipline Board, leading Allen to respond with more emails. Blackwell fails to identify any municipal code or statute requiring its retained attorneys to respond to all emails, or any city policy that Allen may possibly have been following. And even if he did, Allen did not sign any of these emails as "city attorney," identify himself as the City's legal representative, or otherwise purport to be emailing on the city's behalf. Nor did Allen expressly invoke the city's authority or claim to wield government power. The complaint fails to plausibly explain how such emails are so "overborne by the pervasive entwinement of public institutions and public officials" that they are fairly attributable to the City itself, rather than to Allen as a private actor. *Marie*, 771 F.3d at 364 (quoting *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009) (per curiam)).

**\*6** Blackwell offers two additional reasons why Allen's personal emails should be attributed to the City under the nexus test: the complaint alleges that the City "approved payment on the invoices specifically for the emails sent by Defendant Allen to Mr. Blackwell," R. 12, PID 118; Appellant Br. at 22; and Allen's emails are "replete with references to the money he makes and will make as city attorney because of Mr. Blackwell's engagement with the City," Appellant Br. at 23.

Allen attached his firm's invoices to the City to his motion to dismiss. They show that he billed the City for his time spent responding to Blackwell's FOIA request, but they contain no

Case 1:23-cv-00255-PLM-RSK ECF No. 12-7, PageID.275 Filed 05/15/23 Page 6 of 9
Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

entry from August 2021 that could plausibly indicate that he billed the City for the time spent responding to Blackwell's meme or email to the Discipline Board. We are not required to accept allegations as true when they are contradicted in this way.[5]

As for Allen's references to making money as a city attorney, the fact remains that he works for a private law firm—Allen Brothers, PLLC. The complaint acknowledges this fact. A private-sector attorney does not automatically become a state actor just by representing a government entity. See *Dyer v. Md. State Bd. of Educ.*, 685 F. App'x 261, 263 (4th Cir. 2017) (per curiam) ("A law firm and attorney who represent a public school board, like the law firm Defendants did here, do not become state actors under [Section] 1983 by providing legal services to the board, a power not possessed by virtue of state law."); *Caleb v. Grier*, 598 F. App'x 227, 234 (5th Cir. 2015) (per curiam) (holding that attorneys hired for a school's internal investigation were not liable as state actors merely for recommending that the school board terminate the plaintiffs); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009) (dismissing a Section 1983 action "because attorneys do not become state actors by representing state or local governments"); *Freshwater v. Mount Vernon City Sch. Dist. Bd. of Educ.*, 2010 WL 1434314, at *2 (S.D. Ohio 2010) ("It is well settled that a private attorney does not become a state actor simply by representing a public body.").

We do not foreclose the possibility that an attorney retained by the government could act under color of state law. See *Polk County v. Dodson*, 454 U.S. 312, 324–25 (1981) (concluding that a public defender "did not act under color of state law in exercising her independent professional judgment in a criminal proceeding," but hypothesizing circumstances where a public defender could be considered a state actor for purposes of Section 1983). But Blackwell failed to plausibly allege such circumstances here. Nothing in the form, content, or context of Allen's emails suggests that he was communicating on the city's behalf, representing the city's interests or beliefs, or operating pursuant to city policies. "Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities." *Lindsey v. Detroit Ent., LLC*, 484 F.3d 824, 827 (6th Cir. 2007). Here, the only plausible inference that can be drawn from the complaint is that Allen responded in his individual capacity to emails that he deemed personally insulting.

*7 In sum, absent any indicia that Allen emailed Blackwell on the City's behalf or pursuant to City policies, rather than in his personal capacity as a private citizen, Blackwell does not plausibly allege a sufficient nexus between Allen's emails and the City. *Brentwood Acad.*, 531 U.S. at 295. Accordingly, the district court did not err in dismissing Blackwell's Section 1983 claims against Allen on these grounds.

### B. Allen as a Public Official

In the alternative, Blackwell argues that the district court failed to consider "any of [his] allegations that as a high-ranking decision-maker in the City, [Allen] was a government official." Appellant Br. at 18. Even assuming that Allen was somehow a city official, this argument too is unavailing.

"[N]ot every action undertaken by a person who happens to be a state actor is attributable to the state." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). To determine whether a public official was acting in his state capacity, we apply the "state-official test," which is "simply a version of the Supreme Court's nexus test." *Lindke*, 37 F.4th at 1202-03 (explaining that whether an official "acts pursuant to his governmental duties or cloaked in the authority of his office is just another way of asking whether his actions are controlled by the government or entwined with its policies"). Generally, this test is not satisfied unless a state actor's conduct (1) occurs "in the course of performing an actual or apparent duty of his office," or (2) "unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359 (citing *West*, 487 U.S. at 49–50). For the same reasons Blackwell failed to plausibly allege state action under the nexus test, he also fails under the state-official test.

1.

Regarding the first test, responding to emails could conceivably fall within the actual or apparent duties of a city attorney in some circumstances. But Allen is not "engaged in state action" *every* time he communicates via email. *Cf. Lindke*, 37 F.4th at 1205 (noting that when a city manager "visits the hardware store, chats with neighbors, or attends church services, he isn't engaged in state action merely because he's 'communicating'—even if he's talking about his job"). As discussed, Blackwell does not allege that the City instructed Allen to send the discriminatory emails, approved the emails ahead of time, or was otherwise involved in

Case 1:23-cv-00255-PLM-RSK ECF No. 12-7, PageID.276 Filed 05/15/23 Page 7 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

their drafting. And he does not allege that Allen was acting pursuant to a city statute or municipal code, following an unofficial city policy, or even acting to advance the City's interests when he responded to Blackwell's meme or email to the Discipline Board. *See id.* at 1204-05 ("First, no state law, ordinance, or regulation compelled Freed to operate his Facebook page. In other words, it wasn't designated by law as one of the actual or apparent duties of his office."); *see also Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015) (rejecting a Section 1983 claim because "county prosecutors are sometimes authorized to speak on behalf of their employers, [but] [the plaintiff] pleads no facts to support her allegation that the County authorized or encouraged [the defendant's] social and political commentary"). Though he claims that the City tacitly approved the emails after the fact by paying Allen's invoice, the invoices themselves show this allegation to be untrue. Even taking the remaining allegations of the complaint as true, they fail to give rise to an inference that Allen was acting with actual authority or "exercising his responsibilities [as city attorney] pursuant to state law" when he emailed Blackwell. *West*, 487 U.S. at 50.

**\*8** Nor did Allen claim to represent the City or invoke his status as a city attorney in a way that would create apparent authority. *Compare Van Ort v. Est. of Stanewich*, 92 F.3d 831, 839 (9th Cir. 1996) (concluding that a police officer did not act under color of state law during an attempted robbery because "[a]t no point did [the defendant] purport to be acting as a policeman"), *with Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (holding that a jail commander acted under state law when he assaulted the plaintiff because he prevented bystanders from intervening by claiming that he was a "cop," therefore invoking—and abusing—his law-enforcement status). The fact that Allen used a non-city email address, and sent many of the emails from a personal device outside normal city business hours, further undermines Blackwell's claim that Allen emailed him pursuant to his role as city attorney. *Compare McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) (finding state action where the plaintiff accessed confidential information by signing into a government database during normal working hours, using a computer and password supplied to her by the county), *with Naffe*, 789 F.3d at 1037 (noting that "each Tweet or post cited by [the plaintiff] is time-stamped very late at night or early in the morning, a fact which undermines her claim that [the defendant] blogged and Tweeted during normal business hours using County resources").

Accordingly, we conclude that the complaint gives rise only to the inference that Allen was pursuing a personal interest in responding to Blackwell's emails, not acting under any actual or apparent authority. This private conduct, occurring "outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Waters*, 242 F.3d at 359 (citing *McNeese v. Vandercook*, 173 F.3d 429 (6th Cir. 1999) (per curiam)).

2.

Nor does Blackwell's complaint plausibly allege that Allen could not have sent the emails without the authority of being the city attorney. Taunting Blackwell over email was not a task "made possible only because [Allen] [was] clothed with the authority of state law." *Honaker v. Smith*, 256 F.3d 477, 484–85 (7th Cir. 2001). Any person with an email address is empowered to send the objectionable content Blackwell alleges here. *See Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1515 (11th Cir. 1997) (holding that a police officer's conduct in breaking in and raping a woman was a private act, not accomplished because of power he possessed under state law, because "any thug or burglar could have committed the same violent acts," and in that respect "he was no different from any other ruffian"). It did not require special government equipment, resources, or access, and Allen had no need to "invoke[ ] the powers of [his] office to accomplish the offensive act." *McDade*, 223 F.3d at 1140; *compare id.* (finding state action where the defendant's status as a state employee allowed her access to a government database, which she used to obtain confidential information), *with Naffe*, 789 F.3d at 1037 (finding that a county prosecutor did not act under color of state law when commenting on politics through his personal social media page). On the contrary, Allen could have mocked Blackwell in the exact same fashion whether he was retained by the City or not. *Waters*, 242 F.3d at 359 (rejecting a Section 1983 claim because the defendant "would have been in the same position to harass and abuse [the plaintiff] even if he had not been a city alderman").

True, Allen's emails mention the use of a subpoena. However, in context, they are clearly referring to subpoenaing "Susana Hamad" as part of the Discipline Board investigation that Blackwell initiated, not threatening to arbitrarily subpoena Blackwell in a vacuum. And the references to the subpoenas did not concern any proceedings involving the City. Moreover, any party to a lawsuit could threaten the same.

Case 1:23-cv-00255-PLM-RSK   ECF No. 12-7,   PageID.277   Filed 05/15/23   Page 8 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

Subpoenas are a basic tool of discovery, not a power reserved exclusively to a city attorney. In sum, Allen could have sent the same email—including its insults and subpoena references—using the same email address, whether or not he was retained by the City. Blackwell therefore fails to plausibly allege an abuse or misuse of government authority in violation of Section 1983.

**\*9** Blackwell resists this conclusion, arguing that "the fact remains that [Allen] would not have sent these malicious emails without Mr. Blackwell's extensive history with him in his role as city attorney." Appellant Br. at 20. But again, Allen's status as city attorney does not automatically render every one of his emails a state action. *Cf. Lindke*, 37 F.4th at 1206-07 (holding that a city manager did not engage in state action by running a Facebook page as a "public figure"—even though the page listed his city email and the city website, along with a profile photo of the defendant wearing his city-manager pin—because he "did not operate his page to fulfill any actual or apparent duty of his office," and "he didn't use his governmental authority to maintain it").

Nor does the mere fact that Blackwell knew that Allen was an attorney retained by the City mean that Allen abused his government position to violate Blackwell's rights. *See Naffe*, 789 F.3d at 1038. The focus of our inquiry is not what Blackwell knew about Allen, but rather on how Allen used his position as an attorney retained by the City to harm Blackwell. *Id.* at 1038-39. The complaint fails to plausibly set forth any use or abuse of state power; it merely reiterates that Allen emailed Blackwell "in his capacity" as city attorney. Absent any plausible factual allegations backing up this legal conclusion, the Section 1983 claims against Allen fail. Accordingly, the district court properly granted Allen's motion to dismiss.

## IV.

Turning to the City's motion to dismiss, the district court correctly held that, because all claims against Allen failed on the ground that he was not a state actor, any Section 1983 claims against the City based on Allen's actions must also fail.

When considering a claim of municipal liability under Section 1983, we ask (1) "whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law," and (2) "whether the alleged deprivation was caused by the defendants acting under color of state law." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004); and *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003)). Even then, since a municipality "may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978), a plaintiff must also allege that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights. *Powers*, 501 F.3d at 607 (quoting *Monell*, 436 U.S. at 694).[6]

Here, Blackwell argues that "[a]s a decisionmaker, Defendant Allen made a deliberate choice to discriminate against Mr. Blackwell because of his disability and retaliate against Plaintiff for exercising his First Amendment rights, amounting to a policy pursuant to *Monell*." Appellant Br. at 31.

As discussed above, the complaint fails to plausibly allege that Allen emailed Blackwell while acting under color of state law. In turn, it fails to plausibly allege that Allen acted in *any* official capacity, much less in the capacity of an official with final decision-making authority. The district court therefore correctly held that Blackwell fails to plausibly state a claim of municipal liability under *Monell*. *See Monell*, 436 U.S. at 694 (explaining that it is only when "execution of a government's policy or custom, whether made by *its lawmakers* or by *those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under [Section] 1983" (emphasis added)); *see also Morris v. City of Detroit*, 789 F. App'x 516, 519 (6th Cir. 2019) ("Plaintiffs' Fourth and Fourteenth Amendment claims require Adams to be a state actor, which in turn requires her to have acted under color of law. However, as discussed above, Adams was not acting under color of law. Consequently, the City cannot be liable for Adams' personal actions not taken under color of state law, and plaintiffs' claims against the City fail.").

**\*10** The district court likewise did not err in dismissing Blackwell's ADA claim against the City. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation."

Case 1:23-cv-00255-PLM-RSK ECF No. 12-7, PageID.278 Filed 05/15/23 Page 9 of 9

Blackwell v. Allen, Not Reported in Fed. Rptr. (2022)
2022 WL 17832191

*Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)).

Blackwell alleges intentional discrimination by the City under Title II. But the district court correctly read the complaint as premising the City's ADA liability exclusively on Allen's actions as the City's "agent." R. 25, PID 409; R. 12, PID 123 ("As a result of *Defendant Allen's actions*, Plaintiff is being denied the benefits of other non-disabled citizens and being subjected to discrimination because of his disability." (emphasis added)). We recently held in *Jones* that "vicarious liability does not apply to Title II of the ADA or [Section] 505 of the Rehabilitation Act." 20 F.4th at 1122. Thus, even assuming that Allen acted as an agent of the City in sending the emails—which the complaint fails to plausibly allege—*Jones* squarely forecloses any relief against the City under Title II of the ADA based on vicarious liability for Allen's conduct. The district court properly dismissed all claims against the City.

## V.

For the reasons set out above, we AFFIRM the district court's judgment.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 17832191

## Footnotes

1. A "meme" is an "amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media." Merriam-Webster Dictionary, https://www.merriamwebster.com/dictionary/meme (last visited Nov. 6, 2022).

2. Allen responded directly to the email using his JamesAllen@allenbrotherspllc.com account. He did not copy his partners at the law firm or any City officials on the reply.

3. Allen replied directly to the email from the Susana Hamad address and did not copy the Discipline Board on his reply.

4. While Count II of the amended complaint clearly states that the ADA claim is "[a]s to the City of Hamtramck," Counts I and III do not specify whether Blackwell seeks relief under Section 1983 from Allen, the City, or both. R. 12, PID 121-23. But the City interpreted Blackwell as bringing municipal-liability claims against it under Section 1983 and moved to dismiss them, and Blackwell responded that he sufficiently pled "that Allen had decision-making authority as a city attorney for the City of Hamtramck and therefore the City of Hamtramck is liable for [his] § 1983 claims under *Monell*," R. 21, PID 333-34, so the district court addressed the issue.

5. We may consider documents attached to a motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to her claims." *McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298 (6th Cir. 2016) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Blackwell specifically references the invoices in his amended complaint and makes them central to his Section 1983 claims. "Furthermore, this court may take judicial notice of public records," such as invoices paid by the City to its legal counsel, "and we are not required to accept as true factual allegations that are contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)).

6. Illegal policies or customs include: (1) an illegal official policy or legislative enactment; (2) an official with final decision-making authority ratifying illegal actions; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

---