UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| C.C., as Parent and Legal Guardian of JANE DOE, a Minor, | : : Case No. 1:23-cv-255 : |
| Plaintiff, | : HON. PAUL L. MALONEY : |
| v. | : : |
| MARCELLUS COMMUNITY SCHOOLS, et al., | : : : |
| Defendants. | : |

**PLAINTIFF'S RESPONSE TO
DEFENDANT ROBERT DIETZEL'S MOTION TO DISMISS**

Plaintiff, by and through undersigned counsel, respectfully submits this Response to Defendant Robert Dietzel's Motion to Dismiss (hereafter, "Motion") (ECF No. 12). The Court should reject Defendant Dietzel's arguments that Plaintiff failed to state a claim with regard negligence against Defendant Robert Dietzel (hereafter "Dietzel") because (1) Dietzel was not acting in his capacity as an attorney and did not represent Plaintiff when he was investigating Plaintiff's Title IX claims; therefore, Dietzel's argument that he is protected by the holding in *Barnard v. Dilley*, 134 Mich. App. 375; 350 N.W.2d 887 (1984), fails; (2) as a matter of public policy, if Dietzel is not a state actor, he should not also be immune from tort liability simply because he happens to be an attorney.  Further, because Dietzel failed to make any arguments concerning the merits of Plaintiff's negligence claim, those arguments were waived. Therefore, Defendant Dietzel's Motion to Dismiss should be denied.

## TABLE OF CONTENTS

STATEMENT OF FACTS ........................................................................................................ 5

PROCEDURAL BACKGROUND ........................................................................................... 7

LAW AND ARGUMENT ......................................................................................................... 7

    I.    PLAINTIFF'S CONSTITUTIONAL CLAIMS .................................................................. 8

    II.    PLAINTIFF'S CLAIM UNDER THE ELLIOT-LARSEN CIVIL RIGHTS ACT ........................ 8

    III.    PLAINTIFF'S GROSS NEGLIGENCE CLAIM ................................................................ 8

    IV.    PLAINTIFF'S NEGLIGENCE CLAIM ........................................................................... 8

        *A.*   *Defendant Dietzel mischaracterizes Plaintiff's negligence claim and, in doing so, applies incorrect legal precedent.* ........................................................................................ 10

        *B.*   *As a matter of public policy, an attorney should not be immune from tort claims simply because they are an attorney when they were not acting in the scope of the attorney-client relationship.* ........................................................................................ 14

        *C.*   *Because Defendant Dietzel failed to make arguments concerning the merits of Plaintiff's negligence claim in his Motion to Dismiss, those arguments are waived.* ......... 15

CONCLUSION ....................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................ 6

*Barnard v. Dilley*, 134 Mich. App. 375, 350 N.W.2d 887 (1984) ....................................... 9, 10, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 6

*Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016) ....................................................................... 6

*Clark v. Dalman*, 379 Mich. 251, 150 N.W.2d. 755 (1967) ............................................................. 8

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir.  2007) ....................................................................... 6

*Douglas v. Edgewater Park Co.*, 369 Mich. 320, 119 N.W.2d 567 (1963) ................................... 8

*Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 822 N.W.2d 190 (2012) ........................................ 7

*Klanseck v. Anderson Sales & Serv., Inc.*, 426 Mich. 78, 393 N.W.2d. 356 (1986) ...................... 8

*Massey v. Scripter*, 401 Mich. 385, 258 N.W.2d 44 (1977) ............................................................ 8

*Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977) ............................................................ 7

*Novosteel Sa v. United States,* 284 F.3d 1261 (Fed. Cir. 2002) .................................................. 14

*Schultz v. Consumers Power Co.*, 443 Mich. 445, 506 N.W.2d 175 (1993) ................................. 8

*Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546 (6th Cir. 2008) ....................................................... 14

*Vest v. Resolute FP US Inc.*, 905 F.3d 985 (6th Cir. 2018) .............................................................. 6

*Zeni v. Anderson*, 397 Mich. 117, 243 N.W.2d 270 (1976) ............................................................ 8

**Statutes**

34 C.F.R. Part 106 ................................................................................................................. 8, 9, 10, 11

**Rules**

Fed. R. Civ. P. 8(a). ................................................................................................................................ 6

Mich. R. Prof. Cond. 1.7 ................................................................................................................11, 12

**Publications**

Mid-Atlantic Equity Consortium, Inc., *Title IX Investigator Roles and Responsibilities* ............. 10

**Other Authorities**

La. St. Univ. Civil Rights & Title IX, *Contact Us* ...........................................................................11

Mich. Model Civ. Jury Instr. 10.02. .................................................................................................... 7

Mich. Model Civ. Jury Instr. 12.05 ..................................................................................................... 8

Univ. of Mich. Equity, Civil Rights & Title IX, *Our Team*............................................................11

**STATEMENT OF FACTS**

During the 2021-2022 academic year, Jane Doe was a fifth-grade student at Marcellus Elementary School, a school operated by Defendant Marcellus Community School District (hereafter, "the District"). ECF No. 1, PageID.8, ¶ 37. On November 11, 2021, Plaintiff filed a formal Title IX Complaint with the Defendant School. ECF No. 1, PageID.16, ¶ 119. Defendant school then assigned Defendant Dietzel as the Title IX Investigator. ECF No 1, PageID.17, ¶ 135. Plaintiff argues that the investigation into her claims was improperly handled by Defendant Dietzel for several reasons. First, the investigation was not completed in a timely manner. The investigation ended on April 15, 2022, after taking 155 days to be completed. ECF No. 1, PageID.18, ¶ 144. Further, Defendant Dietzel did not notify Plaintiff of, or provide any reasons for, the unreasonable delay. ECF No. 1, PageID.19, ¶ 147.

Defendant Dietzel also failed to include an allegation of sexual assault made by Jane Doe in his investigative report. After Defendant Dietzel interviewed Jane Doe and her parents in early December 2021, he refused to include Jane Doe's allegation that another student had kissed her genitals while playing the "Tweedle Dee" game in his investigative report. ECF No. 1, PageID.19, ¶ 151. Further, Defendant Dietzel failed to interview specific witnesses named by Plaintiff. Specifically, Defendant Dietzel failed to interview witnesses named by Plaintiff who had relevant information about the history of sexual misconduct by one of the respondents. ECF No. 1, PageID.19, ¶ 152.

Defendant Dietzel also failed to properly apply the definition of sexual assault in his investigative report, despite the correct definition being clearly outlined in the District's Title IX policy, and even though the policy was drafted by Defendant Dietzel's own law firm, Thrun Law Firm. ECF No. 1, PageID.22-23, ¶ 169-172. Specifically, Defendant Dietzel omitted the Violence

Against Women Act definitions, codified at 34 U.S.C. § 12291. ECF No. 1, PageID.23, ¶ 171. Defendant Dietzel's report failed to analyze the respondents' conduct toward Jane Doe under these omitted definitions. ECF No. 1, PageID.24, ¶ 175. Therefore, Defendant Dietzel's investigation into the Title IX claims was incomplete. Had these definitions been applied to the facts, the District would have found that both stalking and sexual assault occurred. ECF No. 1, PageID.24-25, ¶ 176-177.

In addition, Defendant Dietzel failed to provide Jane Doe with supportive measures by denying Plaintiff's request for Jane Doe to be interviewed by Defendant Dietzel and Marcellus Police Department officers together. ECF No. 1, PageID.25, ¶ 179-183. Plaintiff made this request several times during the investigation so that Jane Doe would not have to relieve the abuse multiple times, causing her additional trauma. ECF No. 1, PageID.25, ¶ 179. Further, Jane Doe, a young preteen girl, felt uncomfortable meeting with Defendant Dietzel, a strange man, to describe her experience of sexual abuse and was more comfortable with police, who her family knew, present. ECF No. 1, PageID.25, ¶ 180. However, Plaintiff's request for supportive measures was denied without reason and Defendant Dietzel interviewed Jane Doe without the police present. ECF No. 1, PageID.25, ¶ 183.

Finally, Defendant Dietzel's investigative report included a provision stating that the information contained in the report was confidential and that neither the Complainant or Respondent "may copy, print, or download the document or share or disclose it to any other party." ECF No. 1, PageID.27, ¶ 193. This restriction on Jane Doe's ability to communicate about her experiences violated her rights under both the First Amendment and Title IX laws. ECF No. 1, PageID.27-28, ¶ 194-198. Further, this warning restricted both Plaintiff's and Jane Doe's ability to

6

seek further assistance and gather additional evidence following the investigation. ECF No. 1, PageID.28, ¶ 200.

## PROCEDURAL BACKGROUND

On March 12, 2023, Plaintiff filed this action. In response, on May 15, 2023, Defendant Dietzel filed a Motion to Partially Dismiss Plaintiff's Complaint.

## LAW AND ARGUMENT

To survive a motion to dismiss, a complaint must contain a "short a plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

### I. PLAINTIFF'S CONSTITUTIONAL CLAIMS

Based on a thorough review of Defendant Dietzel's arguments and cited law, Plaintiff makes no arguments regarding whether Defendant Dietzel is a state actor for purposes of Plaintiff's Constitutional claims.

### II. PLAINTIFF'S CLAIM UNDER THE ELLIOT-LARSEN CIVIL RIGHTS ACT

Based on a thorough review of Defendant Dietzel's arguments and cited law, Plaintiff makes no arguments regarding whether the Elliot-Larsen Civil Rights Act applies to Plaintiff's claims against Defendant Dietzel.

### III. PLAINTIFF'S GROSS NEGLIGENCE CLAIM

Based on a thorough review of Defendant Dietzel's arguments and cited law, Plaintiff makes no arguments regarding whether Plaintiff's gross negligence claim applies to Defendant Robert Dietzel.

### IV. PLAINTIFF'S NEGLIGENCE CLAIM

For a tort cause of action to exist as a matter of law, there must first be a recognized duty owed by the alleged tortfeasor to the injured person. *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 822 N.W.2d 190 (2012). Michigan's Model Civil Jury Instructions define negligence as the failure to use ordinary care. Ordinary care means the care a reasonably careful person would use. Mich. Model Civ. Jury Instr. 10.02. Whether a duty is owed is a question of law. What duty is owed depends on the relationship between the parties and circumstances giving rise to the question of duty. *Moning v. Alfono*, 400 Mich. 425, 438–439, 254 N.W.2d 759 (1977). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id*. at 439. A duty is traditionally established by common-law rules. "The basic rule of common law imposes on every

8

person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v. Dalman*, 379 Mich. 251, 261, 150 N.W.2d. 755 (1967).

Violation of a statute designed to protect against the harm that occurred may create a rebuttable presumption or inference of negligence. *See Klanseck v. Anderson Sales & Serv., Inc.*, 426 Mich. 78, 393 N.W.2d. 356 (1986); *Massey v. Scripter*, 401 Mich. 385, 258 N.W.2d 44 (1977); *Zeni v. Anderson*, 397 Mich. 117, 243 N.W.2d 270 (1976); *see also Douglas v. Edgewater Park Co.*, 369 Mich. 320, 119 N.W.2d 567 (1963). Statutory regulatory standards or industry standards do not establish the standard of care; rather, they go to the question whether a defendant has breached their duty of ordinary care to the injured person. *Schultz v. Consumers Power Co.*, 443 Mich. 445, 456, 506 N.W.2d 175 (1993); *see also* Mich. Model Civ. Jury Instr. 12.05. Defendant Dietzel breached the duty of ordinary care to Jane Doe by failing to comply with 34 C.F.R. Part 106, which mandates certain procedures in Title IX investigations, including but not limited to:

- 34 C.F.R. § 106.45(a)(1): "A recipient's grievance process must—…(ii) Require an objective evaluation of all relevant evidence…."

- 34 C.F.R. § 106.45(b)(5): "When investigating a formal complaint and throughout the grievance process, a recipient must— …(iii) Not restrict the ability of either party to discuss the allegations under investigation…."

Title IX law also requires that Title IX investigators be properly trained and free of conflicts of interest:

> A [federal funding] recipient must ensure that Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process, receive training on the definition of sexual harassment in §106.30, the scope of the recipient's education program or activity, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes,

>as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.

34 C.F.R. §106.45(b)(1)(iii). Defendant Dietzel, whose law firm wrote the District's Title IX policy, knew or reasonably should have known of these obligations on investigators, and his failure to ensure that he was appropriately trained as an investigator constitutes negligence. Finally, Defendant Dietzel's investigation report negligently failed to apply the appropriate definitions of stalking and sexual assault under the District's Title IX Policy, as described below.

### A. *Defendant Dietzel mischaracterizes Plaintiff's negligence claim and, in doing so, applies incorrect legal precedent.*

In his Motion to Dismiss, Defendant Dietzel argues that he cannot be found negligent under Michigan law because, his attorney writes: "When a plaintiff challenges the quality of legal services provided by an attorney, 'the tort is one for malpractice and malpractice only.' *B[a]rnard v. Dilley*, 134 Mich. App. 375, 379, 350 N.W.2d 887 (1984)." ECF No. 12 at 17. Defendant Dietzel misstates the legal standard defined in *Barnard*, which involves a claim filed by a plaintiff against her former attorney. As the *Barnard* court writes when quoted in full: "*The only claim of duty contained in plaintiff's first amended complaint arises out of the attorney-client relationship between plaintiff and defendant Dilley. Where the alleged duty arises out of such a relationship*, the tort claim is one for malpractice and malpractice only." *Id.* at 379-380 (emphasis added). Jane Doe claims no attorney-client relationship with Defendant Dietzel; therefore, Defendant Dietzel's argument that Jane Doe may not sue him for negligence fails. It is the attorney-client relationship between the plaintiff and her attorney that protects the defendant in the *Barnard* case.

In *Barnard*, the plaintiff hired the defendant to represent her in litigation and, during that representation, the defendant allegedly breached their representation agreement. *Id.* at 377. The court wrote that this was "not a contract to perform a specific act, but one to exercise appropriate

10

legal skill in providing representation in a lawsuit." *Id.* at 378. The court further wrote that Plaintiff's "claim is that damages flowed not from his failure to represent her, but from his failure to represent her adequately" and "[t]his is a claim ground on malpractice and malpractice only." *Id.* The court then rejected Plaintiff's negligence claim on the basis that the duty owed to Plaintiff stemmed solely from the attorney-client relationship and when "the duty arises out of such a relationship, the tort claim is one for malpractice and malpractice only." *Id.*

The facts in *Barnard v. Dilley* are not analogous to the facts supporting Plaintiff's claim against Defendant Dietzel here. Plaintiff does not dispute whether Defendant Dietzel was retained as legal counsel by the District. However, Defendant Dietzel was *also* hired by the District to act as its Title IX investigator. Plaintiff is not challenging the quality of Defendant Dietzel's legal services as Defendant Dietzel claims. Defendant Dietzel was not providing legal services to Jane Doe or her family and she has no opinion either way as to the quality of his legal representation of the District. Rather, the facts that support Plaintiff's negligence claim arose solely from Defendant Dietzel's actions while serving as the District's Title IX investigator.

As explained above, Defendant Dietzel was not acting in his capacity as legal counsel while investigating the Title IX Complaint that led to the allegations in this case. The role of Title IX investigator does not require admission to the bar or even a law degree. *See generally* 34 C.F.R. Part 106; *see also* Mid-Atlantic Equity Consortium, Inc., *Title IX Investigator Roles and Responsibilities*, https://maec.org/resource/investigator-roles-and-responsibilities/ (last visited Jun. 30, 2023): "The investigator can be a contracted employee, a member of the school community, or even the Title IX Coordinator. The Investigator cannot also be the Decision-Maker."

Many Title IX investigators are not attorneys and have not earned Juris Doctor degrees. For example, of the five investigators listed on the University of Michigan's Equity, Civil Rights

11

& Title IX Office's website, only three (Connor Caplis, Andrew Kruley, and Sam Warne) are identified as holding Juris Doctor degrees. Univ. of Mich. Equity, Civil Rights & Title IX, *Our Team*, https://ecrt.umich.edu/about-us/our-team/ (last visited Jul. 18, 2023). Investigator Brian Aure's educational background is described as follows: "Brian earned a Master of Business Administration specializing in leadership and a Bachelor of Science degree in criminal justice from Madonna University."  *Id*. And Investigator Michael Maiden's educational background is described as follows: "He graduated from  The University of Maryland at College Park with a Master of Public Policy degree (MPP). Prior to the MPP, Michael earned an LLM in International Law from Lancaster University in the UK." *Id*. At Louisiana State University, the Office of Civil Rights & Title IX lists degrees after each staff member's name. La. St. Univ. Civil Rights & Title IX, *Contact Us*, https://www.lsu.edu/civil-rights/about/contact-us.php (last visited Jul. 18, 2023). While investigator Jayson Santos is identified as holding a Juris Doctor degree, investigators Arlette Henderson and Tranell L. Mitchell are identified as holding Master of Science degrees. *Id*.

Further, Defendant Dietzel could not have been acting in his capacity as legal counsel for the District while simultaneously acting as the District's Title IX investigator without violating the Michigan Rules of Professional Conduct. A school's Title IX grievance procedure must "require that any individual designated by a recipient as a Title IX Coordinator, investigator, decisionmaker… not have a conflict of interest or bias" for or against the complainant or respondent. 34 C.F.R. 106.45(b)(1)(iii). It is common for schools to designate an employee to be their Title IX Investigator; however, issues can arise, as they did here, when a school's own legal counsel is designated as such. Michigan attorneys owe an affirmative duty of loyalty to their client and must act in a manner that is in their client's best interest. *See* Mich. R. Prof. Cond. 1.7 (2022), Comment: "Loyalty is an essential element in the lawyer's relationship to a client."  That duty is

compromised if that same attorney must also act as an investigator under Title IX because they may have to act in a way or provide a recommendation that is in direct conflict with their duty as the District's legal counsel. This principle is outlined at length in the Comment:

> Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

*Id*. Here, in the role as Title IX investigator, Defendant Dietzel's duty was to gather all relevant information and evidence about the allegations Jane Doe presented, draft a thorough investigative report, and provide recommendations to the Title IX Coordinator about what findings she should make. Those duties directly conflicted with any role he may have held as an attorney for the District, as there was a high likelihood that the information he gathered and his resulting recommendations might not be in the best interest of the District, particularly given a situation such as this where one of the respondents' parents is a District employee and would not likely want her daughter to be subject to discipline such as suspension or expulsion by her employer.

Plaintiff does not argue that attorneys generally cannot be hired by a school district to act as the district's Title IX investigator. Rather, Plaintiff argues that if a school designates their own legal counsel as their Title IX investigator, that individual cannot act in both capacities simultaneously. Rather, that attorney must separate those roles to comply with their obligations under the Michigan Rules of Professional Conduct. Therefore, because Defendant Dietzel was retained as legal counsel for the District, he could not have been acting in his capacity as legal counsel when investigating Jane Doe's Title IX claims. If Defendant Dietzel was acting in his

capacity as legal counsel as Defendant argues in his Motion to Dismiss, he will have violated both his obligations under the Michigan Rules of Professional Conduct and Title IX law.

Because the holding in *Barnard v. Dilley* is dependent upon whether the attorney is acting in his capacity as an attorney for the plaintiff, the Court should not apply the same analysis here, but rather must consider the new question of whether an attorney who is not acting in the role of attorney for a plaintiff owes a duty of care to that plaintiff.

> **B. As a matter of public policy, an attorney should not be immune from tort claims simply because they are an attorney when they were not acting in the scope of the attorney-client relationship.**

While the *Barnard v. Dilley* court denied Plaintiff's negligence claim because the Defendant was acting in his capacity as Plaintiff's attorney, the court did not hold that an attorney could not be sued for negligence at all. *Barnard*, 134 Mich. App. at 379-380. As stated above, the holding in that case was dependent on whether the attorney was acting in his capacity as an attorney when the facts supporting Plaintiff's claim arose. *Id*. Because the duty owed to Plaintiff stemmed from the attorney-client relationship*,* the *Barnard* court held that the claim is one for malpractice only. *Id*. The *Barnard* court was careful to include this qualifier, and following this reasoning, if an attorney's duty to a plaintiff did *not* stem from the attorney-client relationship, a negligence claim may survive. To argue otherwise would indicate that an attorney could breach a contract, violate a duty of care, or even break a law and be immune from litigation in tort simply because they are an attorney, even if their conduct was wholly separate from their practice as an attorney. As a matter of public policy, that cannot stand.

Here, Defendant Dietzel, though retained as legal counsel by the District, was not acting in his capacity as legal counsel when he took the actions and inactions supporting Plaintiff's negligence claim. Rather, he was acting in his capacity as the District's Title IX investigator. A

14

non-attorney Title IX investigator could certainly be sued for negligence for failing to comply with Title IX law and regulations in conducting a Title IX investigation. Both the holding in *Barnard v. Dilley* and public policy support this Court allowing Plaintiff's negligence claim against Defendant Dietzel to proceed.

### C. Because Defendant Dietzel failed to make arguments concerning the merits of Plaintiff's negligence claim in his Motion to Dismiss, those arguments are waived.

The Sixth Circuit has "found issues to be waived when they are raised for the first time in replies to responses." *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008). The Court provided its reasoning as to why such issues should not be raised for the first time in a reply. "Reply briefs *reply* to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Id.* (quoting *Novosteel Sa v. United States,* 284 F.3d 1261 (Fed. Cir. 2002)). As such, the Court held that because the non-moving party typically does not have the right to respond to the reply, the issues are typically waived "as a matter of litigation fairness and procedure." *Id.*

In Defendant Dietzel's Motion to Dismiss, he makes no arguments as to whether he was, in fact, negligent. Rather, his sole argument, albeit incorrect, is that Plaintiff's negligence claim cannot proceed because the claim is rooted in legal malpractice. Because Defendant Dietzel failed to make these arguments in his Motion to Dismiss, and because Plaintiff is not raising the issue in this Response, the Court should hold that Defendant Dietzel cannot make arguments concerning the merits of Plaintiff's negligence claim in his Reply should he choose to file such.

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Robert Dietzel's Motion to Dismiss.

Date: July 19, 2023                                         Respectfully Submitted,

**s/Elizabeth K. Abdnour**
Elizabeth K. Abdnour (P78203)
ABDNOUR WEIKER, LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
517-994-1776
liz@education-rights.com

## PROOF OF SERVICE

I hereby certify that on July 19, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

**s/Elizabeth K. Abdnour**
Elizabeth K. Abdnour
