UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C.C. as Parent and Legal Guardian of
JANE DOE, a Minor,

       Plaintiff,

v.

MARCELLUS COMMUNITY
SCHOOLS, MARCELLS COMMUNITY
SCHOOLS BOARD OF EDUCATION,
And individuals NANETTE PAULEY,
MELINDA BOHAN, SARAH BISCHOFF,
TAMMY CURTIS, HENRY ESSEX, and
ROBERT DIETZEL, in their individual
capacities,

       Defendants.

Case No. 1:23-cv-00255

Hon. Paul L. Maloney

---

### FED. R. CIV. P. 26(f) JOINT DISCOVERY PLAN & CASE MANAGEMENT PLAN

Plaintiff and Defendants, by and through their counsel pursuant to Fed. R. Civ. P. 26(f), present to this Court the following Joint Discovery Plan.

A Rule 16 Scheduling Conference is scheduled for December 18, 2023, before the Hon. Judge Paul L. Maloney. Appearing for the parties as counsel will be: Elizabeth K. Abdnour for Plaintiff; Mark T. Ostrowski and Jessica M. Stark for Defendants Marcellus Community Schools ("MCS"), Marcellus Community Schools Board of Education ("MCSBE"), Pauley, Bohan, Bischoff, Curtis, and Essex; and Mark Gilchrist for Defendant Dietzel.

(1)     Jurisdiction: Plaintiffs assert jurisdiction is conferred upon this Court by Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et. seq,* and the First and

1

Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; pursuant to 28 U.S.C. § 1331, based upon the federal question raised herein; and pursuant to 28 U.S.C. § 1343 for civil rights damages; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Defendants do not dispute the Court's jurisdiction over Plaintiff's federal or state claims.

(2)     Jury or Non-Jury: This case is to be tried before a jury.

(3)     Judicial Availability: The parties do not agree to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and to order the entry of final judgment.

(4)     Statement of the Case:

**Plaintiff's Statement of the Case:** Plaintiff C.C. brings claims on behalf of her daughter, Jane Doe, against Marcellus Community Schools ("MCS"), Marcellus Community Schools Board of Education ("MCSBE"), and individuals Nanette Pauley, Melinda Bohan, Sarah Bischoff, Tammy Curtis, Henry Essex and Robert Dietzel, in their individual capacities. Plaintiff brings claims against Defendants in violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et. seq.;* the Elliott-Larsen Civil Rights Act, M.C.L. 37.2101, *et. seq.;* 42 U.S.C. § 1983, and the First and Fourteenth Amendment. Plaintiff also brings a state law claim against Defendant Dietzel for Negligence under M.C.L. 691.1407 *et. seq.*

During her school career at MCS, Jane Doe was subjected to repeated physical and sexual assault at the hands of two classmates, Mary Roe and Katie Poe[1] while at school. Jane Doe reported this abuse multiple times to multiple MCS officials as the abuse was

---

[1] Mary Roe and Katie Poe are pseudonyms.

2

ongoing for multiple months. Defendants failed to take appropriate action to address the abuse Jane Doe had experienced while at MCS. Defendants did not appropriately inform Jane Doe's parents of the abuse. Mary Roe and Katie Poe abused other children while their abuse of Jane Doe continued. Defendants were made aware of that abuse and still did not take appropriate action. Defendants went on to conduct an inadequate, unethical Title IX investigation and submitted to Jane Doe's parents a report that informed them they were not permitted to speak about the abuse or investigation to anyone – a clear violation of Title IX and the United States Constitution.

Defendants did not protect Jane Doe from her abusers and through their inaction allowed the abuse to continue. Defendants' inappropriate responses violated Title IX, ELCRA, and Jane Doe's First and Fourteenth amendment rights. Further, Defendant Dietzel's conduct amounted to Negligence and Gross Negligence under Michigan law.

**Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's Statement of the Case**: These defendants have negotiated a tentative settlement subject to court approval as a matter involving claims on behalf of a minor. In the unlikely event that the settlement is not approved an finalized in the near future, these defendants provide their statement of the case as follows:

As set forth in the Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's ("School Defendants") Answer to the Complaint, there were no reports made to any school district employees of any sexual assault of Plaintiff's daughter by other students, as alleged in the Complaint, until October 18, 2021, when the school was initially informed of the "Tweedle Dee" tickle game by local law enforcement. Upon receiving complaints about the tickling game on October 18, 2021, the school district personnel took immediate action. Shortly after the complaints were received, the alleged assailants

3

admitted to playing the tickle game which involved a brief unconsented tap on other students' genital area over their clothing before yelling "Tweedle Dee" and running away. The offending students were immediately suspended from school. The school district has additionally responded by adjusting its bathroom procedures to allow only one student to use the restroom at any one time and has stationed adults outside the restroom during most of the school day to monitor student's restroom behavior. Since receiving the complaints on October 18, 2021, and implementing the changes outlined above there has not been any subsequent inappropriate touching or playing of the tickling game reported to the school district.

Prior to October 18, 2021, the school district was aware of a separate incident which had occurred on October 6, 2021, as they had been informed of the incident by Plaintiff and her mother on October 7, 2021. Plaintiff and her mother informed Principal Sarah Bischoff that on the previous day, October 6, 2021, Plaintiff's daughter was in the girl's restroom with a group of girls when another student grabbed the hood of her sweatshirt and attempted unsuccessfully to pull Plaintiff's daughter to the ground by her hood. Ms. Bischoff immediately investigated the incident, including conducting interviews with other girls who had been present in the restroom during the incident. Based on the information available to Principal Bischoff, she correctly concluded that the pulling of sweatshirt did not implicate Title IX and the offending student was punished with a lunch detention.

A Title IX investigation was initiated by Plaintiff's mother on November 11, 2021, regarding the tickle game. The investigation determined that there was no actual sexual assault committed. Moreover, the students at issue were 10 years old at the time of the alleged infractions. There was evidence to support the fact that the offending students were

4

engaged in the tickle game they described as "Tweedle Dee" however, there is no basis to find that the tickle game was sexual in nature.

There is no basis for liability against the School Defendants in this case. The School Defendants did not have knowledge of the tickle game or any other sexual assault occurring prior to the complaints received on October 18, 2021. The school district conducted a proper title IX investigation once a complaint was received from Plaintiff's mother. This case involves inappropriate horseplay by 10-year-old girls and the school district, and its employees, acted appropriately in response to the information they received.

**Defendant Dietzel's Statement of the Case:**  Plaintiffs allege a continued pattern of bullying and abuse at an elementary school, and that the Defendants mishandled those issues. But Plaintiffs have also sued Mr. Dietzel, an outside lawyer hired to conduct a Title IX Investigation. Plaintiff's sole remaining claim against Defendant Dietzel is one for ordinary negligence.

Plaintiffs Jane Doe and her mother, "C.C.," allege that during the 2021-2022 school year, Jane was a fifth-grade student at Marcellus Elementary School. Fellow students Mary Roe and Katie Poe, also fifth graders, had bullied Jane since approximately the first grade. The bullying escalated until, on one occasion during the 2020-2021 school year, Jane Doe allegedly reported physical abuse by Mary and Katie to her teacher, who failed to take adequate steps to address the issue. Additional instances of bullying, including physical abuse, were allegedly reported to Jane Doe's teacher without adequate response. It is alleged that the teacher's failure to address the issue was the result of family connections between the bullies and staff at the school.

The physical abuse continued to escalate, and in the fall of 2021 Mary and Katie began to sexually assault Jane by playing what they referred to as the "tweedle dee game" or "tickle game," which included Mary and Katie touching Jane's genitals. The abuse culminated in an October 6, 2021 incident in which Mary and Katie held Jane's hands behind her back in the bathroom and forced her to the ground. Jane and C.C. met with the school's principal, defendant Sarah Bischoff, who allegedly failed to provide them with information about the school's Title IX Policy, among other things. Instead, she disciplined Mary with a one day "lunch detention," without any further action.

The Complaint then addresses an alleged series of incidents of abuse suffered at the hands of Mary and Katie by another student, Kasia Bochelen. As it relates to Jane and C.C., those allegations state that school staff told Kasia's parents that Jane's parents were aware of the sexual assaults perpetrated against Jane (which was not true). Plaintiffs allege that it was not until Kasia's mother called C.C. and told her that Jane was a victim of Mary and Katie's abuse, that C.C. confronted Jane who confirmed that to be the case.

That revelation prompted a meeting the following day – November 11, 2021, between C.C., principal Bischoff, and Melinda Bohan, the school's Title IX Coordinator, where both Bischoff and Bohan claimed to have no knowledge of Jane's abuse. C.C. filed a Title IX report that day. Plaintiffs characterize the school's response as a "policy of deliberate indifference" to reports of Mary and Katie's alleged sexual misconduct over a number of years. Until this point, there are no allegations related to Mr. Dietzel, as he was not involved in any of the underlying responses to the alleged bullying, nor was he responsible for addressing it.

6

The formal Title IX report filed by C.C. prompted the engagement of attorney Robert Dietzel of Thrun Law Firm, P.C. as the Title IX investigator. Plaintiffs characterize that investigation as having been "deficient and deliberately indifferent."

With specific respect to Mr. Dietzel, Plaintiffs allege that he failed to investigate all allegations of sexual misconduct by failing to include certain allegations or interview certain witnesses who had relevant information, which were "clearly unreasonable in light of the known circumstances." Plaintiffs also take issue with the fact that the Title IX decisionmaker adopted Mr. Dietzel's recommendations whole cloth, despite the fact that Mr. Dietzel's report clearly stated that the decisionmaker was under an "independent obligation to objectively evaluate relevant evidence, and thus cannot simply defer to recommendations made by the investigator in the investigative report." They also take specific issue with the fact that Mr. Dietzel's investigative report omitted certain definitions from the Violence Against Women Act and the school's own Title IX policy.

Importantly, Mr. Dietzel's Title IX Report is attached to Plaintiffs' Complaint and shows that the matter was assigned to Mr. Dietzel on November 17, 2021, and he submitted his report on March 14, 2022. During that time, he (i) undertook 19 witness interviews, (ii) reviewed several witness statements, and (iii) reviewed video footage. The chronology of his work details twenty-seven separate activities, including emails, phone calls, interviews of several student witnesses and their parents, contact with law enforcement, communications with the complainant (instant Plaintiffs) and respondents advising them of their right to inspect and review all evidence collected and to submit a response to said evidence, and ultimately the production of a report.

The remaining claim against Dietzel, a negligence claim arising out of his actions as a Title IX investigator, is legally meritless. As a Title IX investigator Dietzel owed no common law duty to either the alleged victim or subject of the Title IX investigation that could ever give rise to individual tort liability. Plaintiff will never be able to prove her negligence claim because she will never be able to establish the elemental prerequisite of the claim – a common law legal duty – required to proceed.

(5)   <u>Prospects of Settlement</u>: The status of settlement negotiations is as follows: Plaintiff and all Defendants other than Defendant Dietzel have reached a settlement and are in the process of signing a settlement agreement. Plaintiff and Defendant Dietzel have not <u>reached a settlement.</u>

(6)   <u>Pendent State Claims</u>: There are pendent state claims of Negligence and Gross Negligence under M.C.L. 691.1407, *et. seq*. This Court has jurisdiction over the pendent state claims pursuant to 28 U.S.C. § 1367.

(7)   <u>Joinder of Parties and Amendment of Pleadings</u>: The parties agree to file all motions for joinder of parties to this action and to file all motions to amend the pleadings by **<u>January 12, 2024.</u>**

(8)   <u>Disclosures and Exchanges</u>:

    (a) Fed. R. Civ. P 26(a)(1) requires initial disclosures unless the Court orders otherwise. The parties propose the following schedule for Rule 26(a)(1) disclosures: Fed. R. Civ. P. 26(a)(1) Initial disclosures: **<u>February 23, 2024.</u>**

    (b) Plaintiff expects to be able to furnish the names of the Plaintiff's expert witness(es) by: **<u>March 22, 2024.</u>** Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's expect to be able to furnish the names of Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and

8

      Essex's expert witness(es) by: **April 19, 2024.** Defendant Dietzel expects to be able to furnish the names of Defendant Dietzel's expert witness(es) by: **April 19, 2024.**

  (c) It would be advisable in this case to exchange written expert witness reports as contemplated in Fed. R. Civ. P. 26(a)(2). Reports, if required, should be exchanged according to the following schedule:

      Plaintiff's Expert Witness Reports: **April 19, 2024.**

      Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's Expert Witness Reports: **May 17, 2024.**

      Defendant Dietzel's Expert Witness Reports: **May 17, 2024.**

      Rebuttal Expert Witness Reports: **May 31, 2024.**

  (d) The parties are unable to agree on voluntary production at this time.

(9) <u>Discovery</u>: The parties believe that all fact discovery proceedings can be completed by **September 20, 2024.** The parties recommend the following discovery plan:

  <u>Scope of Discovery</u>: The parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, including, but not limited to, MCS's policies and practices with respect to ensuring compliance with Title IX and the ELCRA; Plaintiff's educational experience at MCS and Plaintiff's damages; Defendants' affirmative and other defenses; all other relevant subject areas as necessary. The parties agree that discovery should not be conducted in phases.

  <u>Expert Discovery</u>: Plaintiff may offer experts on both liability and damages. Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's may offer experts on emotional distress damages.

9

Defendant Dietzel may provide expert witnesses on liability and plaintiff's claimed damages.

Discovery Limitations: The parties do not believe discovery limitations are necessary beyond those already incorporated in the Federal Rules of Civil Procedure.

Time Limitations for Depositions: The parties do not believe the presumptive time limits for depositions should be modified in this case.

(10) Disclosure or Discovery of Electronically Stored Information: The parties have discussed the production of electronically stored information and suggest that such information be handled as follows: the parties intend to enter into a proposed stand-alone stipulated protective order governing the handling of ESI as well as the handling of confidential information that may be produced in this litigation.

(11) Assertion of Claims of Privilege or Work-Product Immunity After Production: The parties agree that claims of privilege or work product will not be waived in the event of any inadvertent disclosure of such information. The parties agree to deal with claims of privilege or work-product immunity in the manner set forth in Fed. R. Civ. P. 26(b)(5). If work product, attorney-client, or trial preparation privileges are asserted and a document withheld in its entirety, a privilege log will be contemporaneously prepared. If a document is redacted for privilege, the redaction shall state on its face the privileged claimed. As needed, the parties agree to develop in good faith a stipulated protective order covering claims of privilege or work-product. Both parties reserve the right to file a motion for protective order should they fail to agree to a stipulated order.

(12) Motions: The parties acknowledge that W.D. Mich. LCivR 7.1(d) requires the moving party to ascertain whether the motion will be opposed, and in the case of all non-

10

dispositive motions, counsel or *pro se* parties involved in the dispute shall confer in a good-faith effort to resolve the dispute. In addition, all non-dispositive motions shall be accompanied by a separately filed certificate.

The following dispositive motions are contemplated by each party:

**Plaintiff:** Motion(s) *in limine*, *Daubert* motion(s), motion(s) to strike, and/or motion for summary judgment.

**Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's:** Motion(s) in *limine*, *Daubert* motion(s), Motion(s) to strike, and/or motion for summary judgement.

**Defendant Dietzel:** Motion(s) in *limine*, *Daubert* motion(s), Motion(s) to strike, and/or motions for full or partial summary judgement.

The parties anticipate that all dispositive motions will be filed by **October 25, 2024.**

(13)    Alternative Dispute Resolution: In the interest of conserving judicial resources, the parties acknowledge that the Court will require the parties to participate in some form of Alternative Dispute Resolution. The parties agree that there is no outstanding discovery that would need to proceed before alternative dispute resolution in order to make the process more effective. The parties agree to engage in settlement negotiations and will request the following methods of alternative dispute resolution if and when the parties believe appropriate: voluntary facilitative mediation, case evaluation, or early neutral evaluation.

(14)    Length of Trial: Counsel estimates the trial will last approximately 6 days, total, allocated as follows: 2 days for Plaintiff's case, 2 days for Defendants MCS, MCSBE, Pauley, Bohan, Bischoff, Curtis, and Essex's case and 2 days for Defendant Dietzel's case.

11

(15)   <u>Electronic Document Filing System</u>: Counsel are reminded that Local Civil Rule 5.7(a) now requires that attorneys file and serve all documents electronically, by means of the Court's CM/ECF system, unless the attorney has been specifically exempted by the Court for cause or a particular document is not eligible for electronic filing under the rule. The Court expects all counsel to abide by the requirements of this rule.  *Pro se* parties (litigants representing themselves without the assistance of a lawyer) must submit their documents to the Clerk on paper, in a form complying with the requirements of the local rules. Counsel opposing a pro se party must file documents electronically but <u>serve</u> *pro se* parties with paper documents in the traditional manner.

(16)   <u>Other:</u> None.

Dated:  December 12, 2023

Respectfully Submitted,

<u>s/ Elizabeth K. Abdnour</u>
Elizabeth K. Abdnour (P78203)
ABDNOUR WEIKER LLC
Attorney for Plaintiff
500 E. Michigan Ave. Ste 130
Lansing. MI 48912
Telephone: (517) 994-1776
Fax: (614) 417-5081
Email: liz@education-rights.com

/s/ Mark T. Ostrowski (w/permission)
Mark T. Ostrowski (P49761)
Jessica M. Stark (P80647)
KLUCZYNSKI, GIRTZ & VOGELZANG
Attorney for Defendants Marcellus Community Schools, Marcellus Community Schools Board of Education, Pauley Bohan, Bischoff, Curtis and Essex
3033 Orchard Vista Dr. SE Ste 308
Grand Rapids, MI 49546
Phone: (616) 559-8649
Email: marko@kvglaw.com

<u>/s/ Mark A. Gilchrist</u>
Mark Gilchrist (P61741)
SMITH, HAUGHEY, RICE & ROEGGE
Attorney for Defendant Dietzel
100 Monroe Center, N.W.
Grand Rapids, MI 49503
Phone: (616) 774-8000
Email: mgilchrist@shrr.com