UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**C.C., as Parent and Legal Guardian of
JANE DOE, a Minor,**

    **Plaintiff,**

v.

**MARCELLUS COMMUNITY
SCHOOLS,** *et al.,*

    **Defendants.**

Case No. 1:23-cv-255
Hon. Paul L. Maloney

Oral Argument Requested

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S F.R.C.P. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Now comes Plaintiff C.C., by and through undersigned counsel, and respectfully submits this Response in Opposition to Defendant Robert Dietzel's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 42).

**I.     PROCEDURAL BACKGROUND**

On March 12, 2023, Plaintiff C.C. filed a Complaint in this Court alleging negligence and other claims against Defendant Robert Dietzel (ECF No. 1). The other claims have since been dismissed and the sole claim still before this Court is one alleging negligence for Defendant Dietzel's conduct. The claim arose because of the deliberate indifference of the Marcellus Community School District ("District") and the Marcellus Community Schools Board of Education ("BOE"), as well as Defendant Dietzel, to properly investigate, report and prevent the known and continued abuse of the District's students. District and BOE have since settled this case with Plaintiff out of court. On May 15, 2023, Defendant Dietzel filed a 12(b)(6) motion to dismiss this case for failure to state a claim upon which relief could be granted (ECF No. 11). This motion

was denied by the court on October 17, 2023 (ECF No. 20). On November 8, 2023, Defendant Dietzel filed an Answer to Plaintiff's Complaint raising several affirmative defenses (ECF No. 21). On May 10, 2024, over a year after Plaintiff's Complaint was initially filed, Defendant Dietzel filed a 12(c) motion for judgment on the pleadings (ECF No. 42).

## II.     LAW AND ARGUMENT

### 1. Waiver of Argument Denying Duty Under Title IX in 12(c) Motion

Rule 12(c) requires that every defense to a claim relied upon in any pleading be asserted in the responsive pleading. Therefore, if a Rule 12(b)(6) motion to dismiss is filed after a complaint, the defendant must include all compelling arguments so as to avoid the possibility of waiver or equitable estoppel.[1] "Facial challenges to the legal sufficiency of a claim or defense ordinarily should be resolved before discovery begins."[2] Defendant Dietzel failed to address the issue of whether a duty exists in his initial 12(b)(6) motion. The Sixth Circuit has relied upon *Chudasama* as precedent in the past.[3] As *Chudasama* remains good law, this Court should find that the facial challenge posed by Defendant Dietzel as to the legal sufficiency of this claim should have been resolved before discovery began.

Defendant Dietzel filed a 12(b)(6) motion to dismiss on May 15, 2023.[4] He filed an Answer alleging affirmative defenses on November 8, 2023.[5] Nowhere in his initial 12(b)(6) filing did Defendant Dietzel raise the issue that of whether a duty existed in these circumstances.[6] In fact, Defendant Dietzel tried to raise this issue in his Reply Brief to Plaintiff's Response to his 12(b)(6)

---

[1] Robert S. Lasnik, *Business and Commercial Litigation in Federal Courts § 7:35* (Robert L. Haig ed., West Group & ABA Section of Litigation, 2d ed. 2005).
[2] *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (internal citations omitted).
[3] *Dassault Systems, SA v. Childress*, 101 U.S.P.Q.2d 1032, 663 F.3d 832, 2012 Corpr. L. Dec. P30180 (6th Cir. 2012), citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).
[4] ECF No. 11.
[5] ECF No. 21.
[6] ECF No. 11.

2

motion and was denied.[7] In the Order Granting In Part and Denying In Part Defendant Dietzel's Motion to Dismiss dated October 17, 2023, the Court addressed this:

> Plaintiff argues that the negligence claim does not arise from any attorney-client relationship and does not arise from the performance of any legal service. Plaintiff reasons that one does not have to be an attorney to conduct a Title IX investigation. Plaintiff contends a duty to the student arose from sections of a regulation that mandates certain procedures in Title IX investigations. The Court declines to dismiss Plaintiff's negligence claim. The only argument raised in the motion to dismiss addresses a legal malpractice claim. Plaintiff clarifies that the negligence claim is not a legal malpractice claim. To the extent Defendant denies owing a duty to the subject of a Title IX investigation, he raises that argument for the first time in a reply brief. See Stewart v. IHT Ins. Agency Group, LLC, 990 F.3d 455, 457 (6th Cir. 2021) ("But even well-developed arguments raised for the first time in a reply brief come too late."); Golden v. C.I.R., 548 F.3d 487, 493 (6th Cir. 2008) ("Although the Goldens do mention § 6330(c)(2)(B) in their reply brief, their argument was forfeited when it was not raised in the opening brief.").[8]

This Court has already addressed the issue at hand. Defendant Dietzel is trying, through the mechanism of a 12(c) motion, to address an issue which he forfeited through his failure to raise the issue in his 12(b)(6) motion. Allowing him to raise the issue now would be to permit the circumvention of proper civil procedure and to render the Court's previous order that the issue had been forfeited null and void. Should the Court permit Defendant Dietzel's 12(c) motion to move forward, Plaintiff asks that the Court consider the below arguments.

**2. Standard of Review**

The standard of review on a 12(c) motion is that of a 12(b)(6) motion: relief should be granted whenever, accepting all of the facts alleged as true, Plaintiff fails to make out the elements of a right to relief.[9] However, "the complaint should not be dismissed unless it appears *without doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---
[7] ECF No. 20.
[8] *Id.*
[9] *Co. of Oakland by Kuhn v. Detroit*, 784 F. Supp. 1275, 1279 (E.D. Mich. 1992).

3

relief."[10] A judgment on the pleadings cannot be granted if the complaint raises issues of fact which, if proven, would support recovery; or if an answer raises issues of fact or an affirmative defense which, if proven, would defeat a plaintiff's recovery.[11] Defendant Dietzel fails to allege that Plaintiff has not stated a claim to which she would be entitled to relief.

Defendant relies upon *Sensations, Inc. v. City of Grand Rapids* in establishing the standard of review for his 12(c) motion, but fails to address the clarification the *Sensations, Inc.* court provided regarding its review of motions filed under Fed. R. Civ. P. 12(b) or (c):

> In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief *above the speculative level*....'" In *Erickson v. Pardus*, decided two weeks after *Twombly,* however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" ...We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings…[12]

Under a complete reading of *Sensations, Inc.*, it is clear that a pleading which contains only the required short and plain statement of the claim demonstrating entitlement to relief beyond a formulaic recitation of the elements of a cause of action will suffice to raise a right to relief above the speculative level. Plaintiff has met that burden in her pleading.

Defendant Dietzel's response to Plaintiff's Title IX complaint was so deficient as to be clearly unreasonable, which she believes the evidence will demonstrate after discovery is

---

[10] *Id.*, citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir. 1984) (internal citations removed) (emphasis added).
[11] *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989).
[12] 526 F.3d 291, 295 (6th Cir. 2008) (internal citations removed) (emphasis in original).

completed. The facts plead on the face of the Complaint regarding Defendant Dietzel's unreasonable, negligent response are sufficient to raise the right to relief above a speculative level.

### 3. Applicable Negligence Principles

The elements of a negligence claim under Michigan law are: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation and (4) damages.[13] Defendant is correct that whether a duty exists is a question of law for the court.[14] "In assessing whether to impose a duty courts must evaluate several factors, among which are the relationship of the parties, the foreseeability of harm, and the nature of the risk itself."[15] Once a legal duty is established, in order for liability to attach there must be a breach of that duty, and whether the duty has been breached is a question of fact for the jury.[16]

Defendant cites to *Fitzgerald v. Barnstable School Committee,* arguing that "Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by parents."[17] This is true; however, the *Fitzgerald* court immediately goes on: "The test is objective — whether the institution's response, evaluated in light of the known circumstances, is so deficient as to be clearly unreasonable."[18] The determination of whether a response, evaluated in light of the known circumstances, had been so deficient as to be clearly unreasonable is a question for the trier of fact.

### 4. Case Law

Defendant cited a survey of case law from around the country, but he failed to cite on-point, binding precedent for this Court. Further, he has provided no case law to indicate concretely that

---

[13] *Case v. Consumers Power Co.,* 463 Mich. 1, 615 N.W.2d 17 (Mich. 2000).
[14] *Groncki v. Detroit Edison Co.,* 557 N.W.2d 289, 453 Mich. 644 (Mich. 1996).
[15] *Id.*, citing *Buczkowski v. McKay*, 441 Mich. 96, 100; 490 NW2d 330 (1992).
[16] *Id.*, citing *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 96, 485 N.W.2d 676 (1992).
[17] *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007).
[18] *Id.*

5

Defendant did not owe a duty to Plaintiff in the circumstances in question. In fact, the case law Defendant cited largely points to the plausibility standard as the metric for determining a 12(c) motion.

In *Doe v. Emerson College*, upon which Defendant Dietzel relies in his Motion, the U.S. District Court for the District of Massachusetts found that, in order to survive a motion for judgment on the pleadings, a plaintiff "must state a claim that is plausible on its face."[19] The court went on to explain that the plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[20] Plaintiff has provided facts on the face of her Complaint sufficient to demonstrate more than a sheer possibility that Defendant Dietzel acted unlawfully.

Plaintiff's case is further distinguishable from *Emerson College* because the claims there were dismissed in part because the allegations against the Title IX investigators were not specific.[21] Such is not the case here.  The allegations against Defendant Dietzel in Plaintiff's Complaint are very specific, citing exactly what he did and failed to do that gave rise to the claims against him, as evidenced by Defendant Dietzel's own lengthy recitation of facts in his Motion. Plaintiff's Complaint outlines in detail how the failures in the investigation process harmed Jane Doe.[22]

Further, the *Emerson College* court reached its conclusion because the *Emerson* plaintiff's complaints arose from a mere dissatisfaction with the conclusion of the investigation rather than negligent acts from the investigators themselves.[23] Again, such is not the case here.  Plaintiff's claims are not based upon mere dissatisfaction with the outcome of Defendant Dietzel's

---

[19] 153 F.Supp.3d 506, 513 (D. Mass. 2015).
[20] *Id.*, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[21] *Id.* at 516.
[22] ECF No. 1, pp. 19-20.
[23] *Id.*

6

investigation. They result from actual failures by Defendant Dietzel. As is clear from the Complaint in this matter, there is more than a sheer possibility that there was a conflict of interest at issue because Defendant Dietzel's law firm represented Marcellus Community Schools. The Complaint alleges that Defendant Dietzel was negligent in his failure to take appropriate action when investigating Plaintiff's Title IX claims. The Complaint alleges that Defendant Dietzel's admonishments to Plaintiff that she could not speak with anyone about the Title IX investigation prevented her from seeking legal counsel during the investigation. The Complaint alleges that Defendant Dietzel failed to follow Marcellus Community Schools' Title IX policy, which had been drafted by Defendant Dietzel's own law firm. There is sufficient information on the face of the Complaint to meet Plaintiff's burden under Fed. R. Civ. P. 12(c).

It is well settled in the Sixth Circuit that a higher duty of care is owed to students in K-12 schools than in colleges and universities:

> [B]ecause of their age, a school's power over students in high school "is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." Indeed, the Supreme Court emphasized in Davis "the importance of school officials' 'comprehensive authority . . ., consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools,'" citing cases involving high school students to support this proposition. Considering this difference in oversight and recognizing that Title IX liability is to be analyzed based on the institutional setting, we decline to extend Kollaritsch's same-victim requirement to a Title IX claim in a high school setting.[24]

Further, all the cases relied upon by Defendant Dietzel address a duty owed by a private university, not by an individual, as in the present matter.

In *Doherty v. Emerson College*, which Defendant Dietzel relies upon in his Motion, the U.S. District Court for the District of Massachusetts assessed the sufficiency of a complaint for

---

[24] *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 468 (6th Cir. 2022), citing *Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629, 646, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969); citing *New Jersey v. T.L.O.*, 469 U.S. 325, 342 n.9 (1985)) (internal citations removed).

7

negligence as to the *implementation* of Title IX at Emerson College, not for negligence in *the investigation of a Title IX claim*.[25] Plaintiff's facts are clearly distinguishable from those in *Doherty*. Although *Doherty* ultimately found that there was no duty of care owed to Doherty by Emerson College to implement Title IX in a non-negligent manner, a conflicting judgment was made in a Minnesota case: *John Doe v. University of St. Thomas*.

In *University of St. Thomas*, the U.S. District Court for the District of Minnesota assessed whether a college owed a duty of care to a student who sued for negligence in a Title IX investigation.[26] Similarly to Michigan, this issue was relatively untested in the Minnesota courts. The *University of St. Thomas* court held that a duty of care did exist, but because the university had not breached its duty of care, the court ultimately granted the motion to dismiss. The court held:

> [A]lthough private universities are not subject to the Due Process Clause, they do not escape judicial oversight entirely when seeking to discipline their students. To the contrary, private universities have a common law duty not to act arbitrarily in handling disciplinary matters. Although not based on negligence, the Court finds the cases sufficiently analogous to support finding a duty of reasonable care here.[27]

Thus, there is some precedent to support a finding that there is a duty of care owed by private, non-state actor investigators to parties in Title IX investigations.

Defendant Dietzel also cites to *Doe v. American University* to justify his argument that he did not owe a duty to Jane Doe. Again, this case is distinguishable from the present matter. In *Doe v. American University*, a student sued his school because it found him responsible for violating the school's Title IX policy by engaging in rape.[28] The plaintiff's arguments in *American University* are based on a breach of contract claim that occurred in Washington D.C., which is not

---

[25] No. 1:14-cv-13281-LTS, 2017 WL 4364406 (D. Mass. Sep. 29, 2017)
[26] *John Doe v. Univ. of St. Thomas*, 368 F.Supp.3d 1309 (D. Minn. 2019).
[27] *Id.* at 1317.
[28] No. 19-cv-03097, 2020 WL 5593909 (D.D.C. Sep. 18, 2020).

8

in the Sixth Circuit and does not follow Michigan negligence law.[29] Unlike in *American University*, there existed no contract between Plaintiff and Marcellus Community Schools in the present matter and, by extension, no contract between Plaintiff and Defendant Dietzel. As in *Emerson College*, the plaintiff's claims in *American University* were ultimately based on dissatisfaction with the outcome of a Title IX investigation, not with the investigative process itself.[30]

Defendant Dietzel cites *Leitner v. Liberty University* and *Jackson v. Liberty University* to support his argument that he did not owe a duty of care to Plaintiff.[31] In both *Leitner* and *Jackson*, the U.S. District Court for the Western District of Virginia found that no duty of care existed between Liberty University and its students under negligence law in Title IX matters.[32] The Court in *Leitner* concluded that Virginia case law did not support colleges or universities having duties of care in those circumstances.[33] However, those cases relied upon precedent and law within Virginia, not Michigan. Additionally, like the other cases relied upon by Defendant Dietzel to this point, these cases involve private universities, not public K-12 institutions, as are at issue in this case.

Defendant Dietzel next cites to *Flones v. Dalman* in claiming that, as no negligence claim is recognized in Michigan under these circumstances, Plaintiff's Complaint must be dismissed.[34] *Flones* is entirely distinguishable from the facts at issue. *Flones* involved a lawsuit between a private citizen and a police officer under a theory of "negligent investigation" with regard to a criminal case.[35] The police officer, Dalman, had been investigating "homosexual activity" in a

---

[29] *Id.*
[30] *Id.*; *Doe v. Emerson Coll.*, *supra* note 19.
[31] Case No. 6:19-cv-00029 (W.D. Va. Dec. 4, 2020); 2017 WL 3326972 (W.D. Va. Aug. 3, 2017).
[32] *Id.*
[33] *Leitner* at 21, citing *Jackson*, *supra* note 31.
[34] 502 N.W.2d 725, 199 Mich. App. 396 (1993).
[35] *Id.*

9

public restroom and mistakenly arrested the plaintiff, Flones.[36] The Michigan Court of Appeals found: "A police officer's duty to preserve the peace is owed to the public at large, not to any one individual."[37] The court went on to explain that Dalman's duty to the public was to detect and investigate crime and no duty was owed to Flores as an individual.[38] Conversely, Title IX's entire focus is on the protection of individuals: "*No person* in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…."[39] From the required investigatory steps to interim supportive measures to the requirement for proper documentation, Title IX and its regulations focus on the duties schools owe to individual rather than the public at large. *Flones* is not applicable here.

Defendant Dietzel goes on to cite *Doe v. Hobart and William Smith Colleges* to support his position that a negligence claim is not applicable here.[40] *Hobart* is yet another case outside of the Sixth Circuit wherein a student alleged of committing rape sued a private university because of the outcome of a Title IX investigation.[41] Once again, Defendant Dietzel has cited a case wherein the premise of the negligence claim is based upon a duty of care in the private contractual relationship between a higher education student and a private university: the court focused on exceptions to the general rule that contractual obligations would not give rise to tort liability in New York.[42] This is not the type of relationship, nor the underlying premise for a negligence claim, at issue here.

---

[36] *Id.*
[37] *Id.* at 403, citing *Eichhorn v. Lamphere School Dist.,* 166 Mich. App. 527, 545, 421 N.W.2d 230 (1988) and *Simonds v. Tibbitts,* 165 Mich. App. 480, 483, 419 N.W.2d 5 (1987).
[38] *Id.*
[39] 20 U.S.C. § 1681(a) (emphasis added).
[40] *Doe v. Hobart & William Smith Colleges*, 546 F.Supp.3d 250 (W.D. N.Y. 2021).
[41] *Id.*
[42] *Id.* at 264, citing *Espinal v. Melville Snow Contractors, Inc.* , 98 N.Y.2d 136, 138, 746 N.Y.S.2d 120, 773 N.E.2d 485 (2002).

10

Based on New York contract law, the question in *Hobart* was whether the university had negligently created or exacerbated a dangerous condition for the plaintiff.[43] Ultimately, the U.S. District Court for the Western District of New York agreed with the defendant that its investigation into the Title IX complaint against the plaintiff did not increase the risk that he would be wrongfully found responsible for sexual assault:[44]

> Before Chase began her investigation, the statements made by Roe and Smith were the only information HWS had available to it regarding Roe's complaint. Plaintiff cannot plausibly contend that Chase's investigation, during which he was afforded an opportunity to tell his side of the story, somehow left him in a worse position than he would have been given no investigation whatsoever.[45]

The court found that the plaintiff had not plausibly alleged that the investigator's performance of her contractual obligations created a duty of care to him sufficient to support a negligence claim.[46] Rather than relying on Title IX, the *Hobart* plaintiff instead claimed that under New York contract law and New York Education Law Article 129-B, which requires colleges and universities in the State of New York to "implement uniform prevention and response policies and procedures relating to sexual assault, domestic violence, dating violence and stalking."[47] As it did with New York contract law, the court found that the provisions of Article 129-B imposed obligations on colleges and universities but did not, "by their own terms, impose obligations on individuals."[48] The facts of *Hobart* are clearly distinguishable from those at issue here, as are the legal authorities cited in support of the court's decision.

Defendant Dietzel next relies upon *Doe v. University of Dayton* to support his argument that privately contracted Title IX investigators are not subject to freestanding tort claims.[49] This is

---

[43] *Id.* at 265.
[44] *Id.*
[45] *Id.*
[46] *Id.* at 266.
[47] *Id.*, citing *Doe v. Syracuse Univ.*, No. 5:18-CV-377, 2019 WL 2021026, at *8 (N.D.N.Y. May 8, 2019).
[48] *Id.* at 266.
[49] 766 Fed. Appx. 275, 289 (6th Cir. 2019).

another case in which a student who had been accused of sexual misconduct sued a private university over the outcome of a Title IX case.[50] In *Dayton*, the U.S. Court of Appeals for the Sixth Circuit relied upon *Bowman v. Goldsmith Bros. Co.* in finding: "[A]n action of tort for negligence cannot be maintained unless the defendant's conduct constituted the breach of a duty imposed by law, apart from it being a breach of an obligation created by agreement of the parties, either express or implied."[51] The court went on: "There is no dispute that the Handbook is a contract, so Doe's response that these claims are pled in the alternative to his contract claims does not rescue them."[52]

In the portion of *Dayton* relied upon by Defendant Dietzel, the court explained:

> Claimed violations of Title IX have likewise been analyzed in their proper place, under recognized Title IX rubrics—not as freestanding tort claims. See *Horner ex rel. Horner v. Ky. High Sch. Athletic Ass'n,* 206 F.3d 685, 691 (6th Cir. 2000) ("The Supreme Court rejected the use of agency or negligence principles to render the school district liable for monetary damages under Title IX." (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) ) ); see also *Stiles v. Grainger County*, 819 F.3d 834, 849 (6th Cir. 2016) ("Title IX authorizes suit only against the school itself and not individual administrators.").

Again, the facts at issue here are distinguishable from those in *Dayton*. *Dayton* involved a private university and a higher education student, both of whom had knowingly entered into a contractual relationship with the other. The case primarily focused on contractual claims and, when reviewing the claims related to Title IX within the Title IX framework, was doing so as to the institution itself, not an individual investigator. The reliance upon *Stiles* in explaining that Title IX authorizes suit only against the school and not individual administrators indicates that this was focused on the individual administrators in the claim.[53] Defendant Dietzel has made it abundantly clear in his prior filings with this Court that he was *not* an employee of Marcellus Community Schools,

---

[50] *Id.*
[51] *Id.*, citing *Bowman v. Goldsmith Bros. Co.,* 109 N.E.2d 556, 557 (Ohio Ct. App. 1952).
[52] *Id.*
[53] *Id.*, citing *Stiles v. Grainger County*, 819 F.3d 834, 849 (6th Cir. 2016).

12

particularly not a school administrator. His role as a private, contracted Title IX investigator is outside the purview assessed in *Stiles* and relied upon in *Dayton*. As such, a suit against Defendant Dietzel as an individual is not barred under Title IX nor Michigan law.

Defendant Dietzel finally relies upon *Doe v. Dordt University* to support his argument that a Title IX investigator owes no duty to a party to conduct their investigation or adjudication in any particular manner.[54] In *Dordt University*, the U.S. District Court for the Northern District of Iowa assessed a claim brought by a higher education student against a private university regarding the discipline he received as the result of a Title IX investigation that found him responsible for three violations of university policy.[55] The *Dordt University* plaintiff argued that "numerous courts around the country have held that a school and its employees owe their students a duty of care in carrying out the school's disciplinary process—or at least, that it was a question incapable of summary disposition."[56] The court analyzed that argument and found:

> These cases, however, are each distinguishable, generally because they neither rely on Iowa law nor the Restatement Third's definition of duty. See, e.g., *Collick v. William Paterson Univ.*, No. 16-471 (KM) (JBC), 2016 WL 6824374, at *26 (D.N.J. Nov. 17, 2016) (applying New Jersey law); *Vizzoni v. B.M.D.*, 459 N.J. Super. 554, 568, 212 A.3d 962 (N.J. Sup. Ct. 2019) (explaining that New Jersey law relies on considerations of risk, foreseeability, or likelihood of harm); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 763 (D. Md. 2015) (applying Maryland law, which has "no set formula for the determination of whether a duty exists"); *Doe v. Univ. of S.*, No. 4:09-CV-62, 2011 WL 1258104, at *21 (E.D. Tenn. Mar. 31, 2011) (applying Tennessee law, which imposes "a duty of reasonable care ... if defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property"); *Atria v. Vanderbilt Univ.*, 142 Fed. Appx. 246, 252 (6th Cir. 2005) (same); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205 (M.D. Fla. 2019) (no negligence claim asserted). Thus, plaintiff does not allege a duty necessary to state a claim for negligence or, in turn, respondeat superior.[57]

---

[54] 616 F.Supp.3d 872 (N.D. Iowa 2022).
[55] *Id.*
[56] *Id.* at 916.
[57] *Id.* at 917.

13

Defendant Dietzel is again relying upon a case that is out of Circuit, that involves a higher education student and a private university, is based on another state's negligence laws, and focuses primarily on dissatisfaction with the outcome of a Title IX investigation. These facts are all distinguishable from those at issue in the present matter. Notably, the cases cited by the *Dordt University* court in the above quote, all of which involve different considerations, standards, and outcomes in the determination of whether a duty existed such that it would give rise to tort liability under New Jersey law.

If Defendant Dietzel is asserting that this Court can and should rely upon non-binding precedent like that cited in *Doe v. Emerson, Doherty v. Emerson, Doe v. Hobart College, Doe v. Dordt University* and others, then he is also arguing that this court can consider and rely upon the precedent set in the above-listed cases which find the existence of a duty.

5. **Tort Liability of Independent Contractors**

It is well established in this case that Defendant Dietzel's position is that he was not an employee or agent of Marcellus Community Schools but rather acted as an independent contractor. If Defendant Dietzel was not an employee or agent of MCS, then it follows that his tort liability would be the same as any other independent contractor.

In *Patterson v. St. Johns Board of Education*, the Michigan Court of Appeals heard a case involving tort claims for intentional infliction of emotional distress, tortious interference with contractual relations, defamation, and gross negligence.[58] The plaintiff was an independent contractor employed by a school district to assist with the demolition of a building when two other independent contractors stole copper from the demolition and claimed the plaintiff had given them permission to do so.[59] The *Patterson* plaintiff sued two other contractors as well as the

---

[58] No. 322135 (Mich. App. Sep. 15, 2015).
[59] *Id.* at 1-3.

14

superintendent of the school district. The court held that the superintendent, as an employee of the district acting within the scope of his authority, was immune from tort liability.[60] Conversely, the court engaged in a thorough analysis of each of the elements of the tort claims alleged against the two independent contractors.[61] While the court ultimately found that the facts did not support the plaintiff's claims, the court was clear that independent contractors in Michigan can face tort liability for actions or inactions that occurred during the course of their work.[62]

Similarly, in *Berry v. Barton-Malow Company*, the Michigan Court of Appeals heard a personal injury case alleging negligence against Troy School District and a private company contracted by the district.[63] Troy School District had engaged in a contract with Barton-Malow Company wherein Barton-Malow was to serve as construction manager for a technology installation project in several Troy schools.[64] Plaintiff Berry was an electrician working on the project when she was electrocuted due to an improperly shielded panel which had not been covered with cardboard to prevent the panel from conducting electricity through the cables electricians pass through the walls or ceiling.[65] The trial court had found that Troy School District was immune from tort liability. Conversely, both the trial court and the Michigan Court of Appeals analyzed tort liability for Barton-Malow as a private contractor, finding that Barton-Malow was not immune.[66] Again, this case makes clear that Michigan independent contractors can face liability for tortious acts.

Defendant Dietzel has been adamant in his pleadings that he was not acting as an agent or employee of Marcellus Community Schools when he conducted the Title IX investigation at issue. If that is the case, then he was acting as an independent contractor and is not immune from liability

---

[60] *Id*. at 5-7.
[61] *Id.* at 7-9.
[62] *Id.*
[63] *Berry v. Barton-Malow Co.*, No. 235475 (Mich. App. Jul. 22, 2003).
[64] *Id*. at 1.
[65] *Id*. at 2-3.
[66] *Id*. at 3-6.

15

for his tortious acts. Defendant Dietzel cannot have his cake and eat it too. If he was not a state actor and therefore immune from tort liability, then he was an independent, private actor and subject to such liability.

### III. CONCLUSION

By failing to raise the issue of whether he could be held negligent in his Motion to Dismiss, Defendant Dietzel waived the only issue he addresses in his pending Motion: whether Defendant Dietzel owed a duty to Jane Doe that would give rise to tort liability in a negligence claim. Therefore, Defendant Dietzel's Motion should be denied.

If, however, the Court chooses to entertain his motion, the case law relied upon by Defendant Dietzel is distinguishable and not on-point to the facts at issue in this case. As discussed at length in section II, subsection 3 of this Response, Defendant Dietzel relies upon cases considering the duties created in contractual relationships between higher education students and private universities, not caselaw focused on the heightened standard of care owed K-12 students under Title IX. Defendant Dietzel also relies primarily upon cases wherein students were bringing claims against educational institutions because of vague dissatisfaction with the outcome of Title IX investigations, not about the actions or inactions within the investigative process that concretely harmed the students. Nothing could be further from the facts of Plaintiff's case. Defendant Dietzel is subject to tort liability for his actions or inactions as an independent contractor, just as any other Michigan independent contractor can be subject to tort liability for their actions or inactions. Whether or not his acts were tortious is a question of fact for the trier of fact, as Plaintiff has properly plead the issues and provided sufficient facts to support that she may have a claim for relief.

Plaintiff's Complaint meets the burden of the plausibility standard and presents more than a mere possibility that a claim exists for which Jane Doe may be entitled to relief. For all the above-listed reasons, Plaintiff requests this honorable Court deny Defendant Dietzel's 12(c) Motion for Judgment on the Pleadings. Alternatively, Plaintiff requests oral argument on the issues presented to be scheduled by the Court.

Date: June 7, 2024

Respectfully Submitted,

**s/Elizabeth K. Abdnour**
Elizabeth K. Abdnour (P78203)
ABDNOUR WEIKER, LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
517-994-1776
liz@education-rights.com

## PROOF OF SERVICE

I hereby certify that on June 7, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

**s/Elizabeth K. Abdnour**
Elizabeth K. Abdnour